**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CLARENCE ROZELL GOODE, JR.,     )
            )
      Petitioner,      )
            )
v.           )     **Case No. 11-CV-150-GKF-FHM**
            )
KEVIN DUCKWORTH,[1] Interim Warden,  )
Oklahoma State Penitentiary,     )
            )
      Respondent.     )

**OPINION AND ORDER**

This is a 28 U.S.C. § 2254 habeas corpus proceeding.  Petitioner Clarence Rozell Goode, Jr. ("Goode") is an Oklahoma death row prisoner incarcerated at the Oklahoma State Penitentiary in McAlester, Oklahoma.  Goode alleges he was convicted of three counts of murder and received three death sentences in violation of his rights under the United States Constitution.  Petition, Dkt. # 18 at 1.  Respondent filed a response (Dkt. # 27) to the petition, Goode filed a reply (Dkt. # 31), and Respondent filed a surreply (Dkt. # 39).  The state court record has been produced and supplemented.[2]  See Dkt. # 40.  The Court has considered all these materials in reaching its decision. For the reasons discussed below, the Court concludes the petition shall be denied.

---

[1]     On May 9, 2016, Kevin Duckworth became Interim Warden of the Oklahoma State Penitentiary.  Pursuant to Fed. R. Civ. P. 25(d), Kevin Duckworth, Interim Warden, is hereby substituted as party respondent in place of Anita Trammell, Warden.  The Clerk of Court shall note the substitution on the record.

[2]     References to the transcript of the trial shall be referred to as "Tr. Vol. __ at __."  The original state court record for Tulsa County District Court, Case No. CF-2005-3904, shall be identified as "O.R. Vol. ___ at ___."  Motion hearings shall be identified as "M. Tr. (date) at ___."

## BACKGROUND

### I.  Factual Background

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct.  Following review of the record, including the trial transcripts and evidence, this Court finds

that the factual summary provided by the Oklahoma Court of Criminal Appeals (OCCA) in its order

resolving Goode's direct appeal is adequate and accurate.  Therefore, the Court adopts the following

factual summary as its own:

> Goode, [Kenneth] Johnson, and [Ronald] Thompson entered the Owasso, Oklahoma home of Mitch Thompson and Tara Burchett-Thompson during the overnight hours of August 25–26, 2005.  Tara's ten-year-old daughter, Kayla, happened to be staying with her mother on this particular night, sleeping on a pallet next to the Thompsons' bed.  All three intruders were armed with handguns.  The intruders entered the bedroom and killed the victims by firing several shots into each of the victims' bodies.

> The State's theory of motive was that Ronald "Bunny" Thompson and Goode had been in a dispute with Mitch Thompson and his friend J.R. Hoffman for a few months.  Hoffman was staying with Mitch Thompson and his family.  Ronald Thompson, who was Mitch's cousin, was living with Mitch's sister, Michelle Chastain.  Michelle Chastain was also one of Goode's girlfriends, and Goode spend a great deal of time at her house.

> This dispute escalated in July, 2005, when Hoffman borrowed a car from Michelle Chastain.  Hoffman was to use the car to pickup some Xanax pills for Goode; however, Hoffman wrecked the car and was arrested for driving under the influence.  Goode recovered the drugs from the car, but Hoffman refused to pay for the damages to the car.  Toward the end of July, a month before these murders, Hoffman and Ronald Thompson got into a fight over their financial disputes.  This fight ended and the parties separated for a short time.

> Soon after, Mitch Thompson and Hoffman came back to Michelle's house armed with a baseball bat.  Goode and Ronald Thompson were at the house.  Mitch Thompson beat Ronald with the baseball bat.  Goode showed a pistol and made everyone go outside.  He turned the gun over to someone else and started a fistfight with Hoffman.

After this, Mitch called the Oklahoma Department of Human Services (DHS), child welfare division, and reported that Michelle, a single mother, had people living at the house who were selling drugs.  DHS started a fraud investigation and as a result, they scheduled a home inspection.  Mitch also called Michelle's employer and told them she was involved in drugs, and she was fired due to these reports.  Evidence was introduced that Michelle threatened to kill her brother, because of his actions, but, at trial, she denied making the threats.  Mitch also tried to get Goode fired from his job at Brookhaven Hospital by reporting that he was selling drugs.

On the evening before the murders, Goode picked up Ronald Thompson at his place of employment at about 10:00 p.m.  Thompson testified that Goode arrived in a car driven by Kenneth "Fu Fu" Johnson.  As they drove away, Goode told Ronald Thompson that they had business to take care of, and he handed Thompson a .22 caliber revolver and some latex gloves.  Thompson said that Goode had a .357 caliber handgun and Johnson had a nine-millimeter handgun.

They drove to Mitch Thompson's house, got out of the car, and entered the house through the open overhead garage door.  Ronald said he kicked in the door from the garage into the house, because they told him to.  Ronald said he thought they were there to scare Mitch.

According to Ronald, he went one way in the house and Goode and Johnson went the other.  Ronald heard gunshots, so he went to the room occupied by Goode and Johnson.  He said Johnson put a gun to his head and told him that he needed to put in some work or he was next, meaning he needed to fire some shots or be shot.  Ronald said he fired several shots into the wall of this room.  They then left and dropped off the guns with another associate, Damos "Peanut" Joseph.

At about 4:15 a.m., Goode arrived at Michelle Chastain's house.  They argued and Goode told her that he just shot her "fucking brother. . . ."  Goode introduced her to Johnson and said he was his cousin.  She saw Ronald's Wal-Mart vest in Johnson's car, but she did not see Ronald Thompson.

Michelle received formal notification of her brother's death just after noon that day.  Her father was also notified of the death of his son and suffered a heart attack after hearing the news.  Michelle was at the hospital with her father when she first talked to detectives, but she did not volunteer any information about her knowledge of the shooting.  During that day, Goode called Michelle Chastain asking if she had talked to the police and he threatened her and her family with harm, if she "made him nervous" by talking to the police.

Then in the early morning hours of August 27, at about 1:00 a.m., Goode and Michelle Chastain were at Denny's Restaurant.  Chastain testified that Goode gave her the details of the killing by saying that Ronald Thompson kicked in the door.  He

said that Ronald was to go into the spare bedroom and kill Hoffman. Instead, Ronald followed Goode and Johnson into the main bedroom and started shooting the child, Kayla Burchett. Goode said he and Johnson had no choice but to shoot as well.

Goode told her that after the initial shots were fired, he heard some noise, so he turned the lights on. He saw Mitch on the floor next to the bed and told Mitch to look him in the face. Goode told Mitch that he should have "never snitched on me" and said "die like a bitch." Then Goode shot Mitch again. Goode told her that Johnson shot Tara Burchett-Thompson, and they would have shot Ronald Thompson, but he took off running.

Kayla was shot five times, once in the head, once in the back and three times in the hip. One of the hip wounds was noticeably smaller than the others, possibly coming from a .22 caliber bullet. Tara had ten gunshot wounds which could have been caused by less than ten shots, because of the paths of the bullets through different parts of the body. Mitch had been shot twice, once in the upper back and once in the face.

A total of seven .357 Sig casings and seven nine-millimeter casings were found in the bedroom. A .22 caliber projectile was found in a cabinet drawer. This cabinet was near small holes in the wall. A search of Damos Joseph's house resulted in the recovery of two spent .22 magnum shells and a .22 magnum cartridge. These cartridges were consistent with the .22 caliber projectile found at the murder scene.

Goode's mother and his brother's fiancé testified that Goode was at the mother's home the evening of the murders. The fiancé, Ruby Gilyard, said Goode left for a period of time, but returned at 11:00 p.m. She could not say whether he stayed the night; however, she did see him the next morning when she woke up. Mrs. Goode testified that he spent the night, because they were traveling to visit Goode's incarcerated brother the next day.

Goode v. State, 236 P.3d 671, 675-76 (Okla. Crim. App. 2010) (footnotes omitted). Additional facts necessary for a determination of Goode's claims will be set forth in detail throughout this opinion.

## II. Procedural History

In Tulsa County District Court, Case No. CF-2005-3904, the State charged Goode, Ronald Thompson and Johnson with three counts of first degree murder, with alternative theories of malice or felony murder, in violation of Okla. Stat. tit. 21 , § 701.7(A) and (B) (Supp. 2004), and one count of first degree burglary, in violation of Okla. Stat. tit. 21, § 1431 (2001). See O.R. Vol. I at 66-68.

The State filed a Bill of Particulars alleging three aggravating circumstances for each of the three murder offenses:  (1) the defendant knowingly created a great risk of death to more than one person; (2) the defendant knowingly committed murder to avoid lawful arrest or prosecution; and (3) there exists a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.  Id. at 156-57 (citing Okla. Stat. tit. 21, § 701.12(2), (5), (7) (2001)).

Goode's case was severed from those of his codefendants, and his trial commenced on December 3, 2007, before the Honorable Tom C. Gillert, District Judge.  Attorneys Stanley D. Monroe and Larry Edwards represented Goode at trial.  On December 12, 2007, at the conclusion of the first stage, the jury found Goode guilty of all three counts of First Degree Murder (Counts 1, 2, and 3) and of First Degree Burglary (Count 4).  Tr. Vol. VIII at 1719; O.R. Vol. IV at 633-36. The jury assessed punishment on Count 4 at twenty (20) years imprisonment and a $10,000 fine. Tr. Vol. VIII at 1719; O.R. Vol. IV at 636.  Prior to commencement of second stage proceedings, the State withdrew the "avoid lawful arrest or prosecution" aggravating circumstance.  Tr. Vol. IX at 1733.  On December 13, 2007, at the conclusion of the second stage, the jury assessed punishment at death on each of the three first degree murder convictions, after finding the existence of the two remaining aggravating circumstances.  Id. at 1846-47; O.R. Vol. IV at 638-43.  On January 7, 2008, Judge Gillert formally sentenced Goode in accordance with the jury's verdicts and ordered the sentences to be served concurrently.  Tr. Sent. at 2.

Goode perfected a direct appeal to Oklahoma Court of Criminal Appeals (OCCA), Case No. D-2008-43. Represented by attorneys James Lockard and Janet Chesley of the Oklahoma Indigent Defense System (OIDS), Goode raised the following ten (10) propositions of error:

Proposition I:    The trial court violated Appellant's Fifth Amendment right to confront and cross examine the witnesses against him when it admitted into evidence, over Appellant's objection, a videotape recording of Michelle Chastain's August 31, 2005, statement to the police; because these statements were made after Ms. Chastain had a motive to lie, they were not admissible as non-hearsay under Title 12, Section 2801(B)(1)(b); the resulting admission of this statement improperly bolstered the State's case and deprived Appellant of a fundamentally fair trial.

Proposition II:    The trial court erred in allowing the prosecution to "impeach" Fred Clemons with supposedly prior inconsistent statements in such a manner that it distorted his testimony into appearing that Appellant had confessed to him, when no such thing in fact happened; the court exacerbated this error by allowing the State to bolster Fred Clemons's credibility, implying that the reason he would not testify Appellant confessed to him was for fear of being labeled a "snitch"; the false impression this left with the jury deprived Appellant of a fundamentally fair trial.

Proposition III:    The trial court committed reversible error by admitting misleading, irrelevant and/or highly prejudicial evidence into the record in violation of Mr. Goode's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Oklahoma Constitution.

Proposition IV:    The admission of a pre-mortem photograph of the youngest of the three victims during the first stage of trial violated Appellant's due process rights to a fundamentally fair trial and injected passion, prejudice, and other arbitrary factors into the second stage proceedings; amended Section 2403 of the Oklahoma Evidence Code is unconstitutional on its face and as applied to Appellant's trial.

Proposition V:    Prosecutorial misconduct prevented Mr. Goode from receiving a fair trial and a reliable sentencing proceeding.

Proposition VI:    The "continuing threat" aggravating circumstance is unconstitutional in light of recent Supreme Court developments and is contrary to evolving standards of decency.

Proposition VII:    Appellant's death sentence must be vacated because the victim impact evidence introduced in the penalty phase violated the victim impact statute and his rights protected by the Eighth and Fourteenth

6

|  | Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution. |
|---|---|
| Proposition VIII: | The jury's consideration of mitigation was unconstitutionally limited by the instruction defining mitigating circumstances in violation of the Eighth Amendment to the United States Constitution. |
| Proposition IX: | Appellant was denied the reasonably effective assistance of counsel guaranteed him by the Sixth Amendment to the United States Constitution when, in the first stage of trial, his counsel failed to make timely objections to prejudicial errors occurring during the trial and when, in both stages of trial, counsel failed to call available witnesses favorable to Appellant's defense and in mitigation. |
| Proposition X: | The accumulation of error in this case deprived Mr. Goode of due process of law and a reliable sentencing proceeding in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article II, §§ 7 and 9 of the Oklahoma Constitution. |

See Brief of Appellant, OCCA Case No. D-2008-43.  Goode also filed a separate application for evidentiary hearing on his Sixth Amendment claims.  On June 9, 2010, the OCCA rejected all of Goode's claims, denied his application for evidentiary hearing, and affirmed his convictions and sentences.  Goode, 236 P.3d at 688, 689.

Goode filed his first application for post-conviction relief on December 7, 2009.  Represented by OIDS attorneys Robert W. Jackson and Cary M. Pirrong, he presented the following four (4) grounds for relief:

| Proposition I: | The trial court, by removing the lone black juror from the jury mid-trial, violated Mr. Goode's Sixth and Fourteenth Amendment rights. |
|---|---|
| Proposition II: | Trial counsel were ineffective for failing to request a continuance due to a paralyzing ice storm that struck Tulsa during Mr. Goode's trial. |
| Proposition III: | Trial counsel's failure to investigate and present relevant mitigating evidence during the trial's penalty phase deprived Mr. Goode of his constitutional right to the effective assistance of counsel. |
| Proposition IV: | Cumulative error entitles Mr. Goode to post-conviction relief. |

<u>See</u> Application for Post-Conviction Relief, Case No. PCD-2008-211.  Goode filed a separate motion for evidentiary hearing on post-conviction claims (Dkt. # 40-1).  In an unpublished opinion, the OCCA denied all requested relief, including Goode's request for an evidentiary hearing.  <u>See</u> Opinion Denying Application for Post-Conviction Relief, entered Sept. 7, 2010, in Case No. PCD-2008-211.

Goode filed his second application for post-conviction relief on July 9, 2010.  Represented by OIDS attorney Robert W. Jackson, he raised the following propositions of error:

Proposition I:     Mr. Goode's due process rights were violated by the prosecution's withholding of evidence relevant to the veracity and credibility of one of its witnesses, Tulsa Police Officer Jeff Henderson.

Proposition II:    Mr. Goode's trial and direct appeal counsel were ineffective for failing to investigate and present evidence that would have undermined the veracity and credibility of Tulsa Police Officer Jeff Henderson.

<u>See</u> Second Application for Post-Conviction Relief, Case No. PCD-2010-661. Goode also requested an evidentiary hearing.  In an unpublished opinion, the OCCA denied the subsequent application for post-conviction relief and the request for an evidentiary hearing.  <u>See</u> Opinion Denying Subsequent Post-Conviction Application, entered Sept. 28, 2010, in Case No.  PCD-2010-661.

On March 26, 2012, after filing his federal petition for writ of habeas corpus, Goode filed a third application for post-conviction relief.  Represented by Assistant Federal Public Defender Robert S. Jackson and attorney C. Robert Burton, Goode raised the following proposition of error:

Proposition One:  Mr. Goode's Sixth, Eighth, and Fourteenth Amendment rights were violated through the ineffective assistance of counsel at trial, sentencing, on appeal, and during post-conviction proceedings.

See Successive Application for Post-Conviction Relief, Case No. PCD-2012-261.  Goode also

sought an evidentiary hearing on his claim.  In an unpublished opinion, filed May 2, 2012, the

OCCA denied the successive application for post-conviction relief and the request for evidentiary

hearing.  See Opinion Denying Successive Application for Post-Conviction Relief, entered May 2,

2012, in Case No. PCD-2012-261.

Represented by Assistant Federal Public Defender Robert S. Jackson and attorney C. Robert

Burton, Goode filed an application to proceed in forma pauperis (Dkt. # 2) and a request for

appointment of counsel (Dkt. # 1) to initiate this federal habeas action. In his petition, Goode

identifies the following ten (10) grounds for relief:

| | |
|---|---|
| Ground 1: | Mr. Goode's Sixth, Eighth, and Fourteenth Amendment rights were violated through the ineffective assistance of counsel at trial, sentencing, and on appeal. |
| Ground 2: | The State failed to turn over impeachment evidence concerning former TPD Detective Jeff Henderson in violation of *Brady v. Maryland* and Mr. Goode's Fifth, Sixth, and Fourteenth Amendment rights. |
| Ground 3: | The trial court deprived Mr. Goode of his rights to due process and a fundamentally fair trial and sentencing by admitting misleading, irrelevant, and/or highly prejudicial evidence. |
| Ground 4: | The admission of Michelle Chastain's videotaped police interrogation deprived Mr. Goode of his rights to confrontation under the Sixth Amendment and due process of law under the Fourteenth Amendment. |
| Ground 5: | The trial court deprived Mr. Goode of his rights to due process and a fundamentally fair trial by allowing the State to call jailhouse informant Fred Clemons primarily for the purpose of impeaching his testimony. |
| Ground 6: | The victim impact evidence introduced at trial violated Mr. Goode's rights under the Eighth and Fourteenth Amendments to the United States Constitution. |

9

Ground 7:          A severe ice storm undermined the trial process resulting in structural error mandating this Court's reversal of Mr. Goode's convictions and sentences.   Alternatively, counsel were ineffective for failing to request a continuance.

Ground 8:          Pervasive prosecutorial misconduct deprived Mr. Goode of his rights to due process and a fundamentally fair trial and sentencing.

Ground 9:          Oklahoma's jury instruction defining mitigating circumstances is unduly limiting; it was used to eliminate jury consideration of mitigation evidence in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

Ground 10:         The accumulation of errors at both stages of trial violated Mr. Goode's rights under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

(Dkt. # 18).

## GENERAL CONSIDERATIONS

### I. Exhaustion

Generally, federal habeas corpus relief is not available to a state prisoner unless all state court remedies have been exhausted prior to the filing of the petition.  28 U.S.C. § 2254(b)(1)(A); Harris v. Champion, 15 F.3d 1538, 1554 (10th Cir. 1994); see also Wainwright v. Sykes, 433 U.S. 72, 80-81 (1977) (reviewing history of exhaustion requirement).  In every habeas case, the Court must first consider exhaustion.  Harris, 15 F.3d at 1554.  "States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights."  Coleman v. Thompson, 501 U.S. 722, 731 (1991) (explaining that the exhaustion requirement is "grounded in principles of comity").  In most cases, a habeas petition containing both exhausted and unexhausted claims is deemed a mixed petition requiring dismissal.  Where it is clear, however, that a procedural bar would be applied by the state courts if the claim were now presented, the reviewing habeas court can examine the claim under a procedural bar analysis instead of requiring exhaustion.  Id. at 735 n.1.

Also, the Court may exercise its discretion to deny an unexhausted claim that lacks merit.  Fairchild v. Workman, 579 F.3d 1134, 1156 (10th Cir. 2009); 28 U.S.C. § 2254(b)(2).

## II.  Procedural Bar

The Supreme Court has considered the effect of state procedural default on federal habeas review, giving strong deference to the important interests served by state procedural rules.  See, e.g., Francis v. Henderson, 425 U.S. 536 (1976).  Habeas relief may be denied if a state disposed of an issue on an adequate and independent state procedural ground.  Coleman, 501 U.S. at 750; Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000).  A state court's finding of procedural default is deemed "independent" if it is separate and distinct from federal law.  Maes v. Thomas, 46 F.3d 979, 985 (10th Cir. 1995) (citing Ake v. Oklahoma, 470 U.S. 68, 75 (1985)); Duvall v. Reynolds, 139 F.3d 768, 796-97 (10th Cir. 1998).  If the state court finding is "strictly or regularly followed" and applied "evenhandedly to all similar claims," it will be considered "adequate."  Maes, 46 F.3d at 986 (citation omitted).  In other words, a state procedural bar "must have been 'firmly established and regularly followed' by the time as of which it is to be applied."  Ford v. Georgia, 498 U.S. 411, 424 (1991).

To overcome a procedural default, a habeas petitioner must demonstrate either:  (1) good cause for failure to follow the rule of procedure and actual resulting prejudice; or (2) that a fundamental miscarriage of justice would occur if the merits of the claims were not addressed in the federal habeas proceeding.  Coleman, 501 U.S. at 749-50; Sykes, 433 U.S. at 91.  The "cause" standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules."  Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, or

interference by state officials.  Id.  The petitioner must also show "'actual prejudice' resulting from the errors of which he complains."  U.S. v. Frady, 456 U.S. 152, 168 (1982).  Alternatively, the "fundamental miscarriage of justice" exception requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted.  McCleskey v. Zant, 499 U.S. 467, 495 (1991).  He must make "a colorable showing of factual innocence" to utilize this exception.  Beavers v. Saffle, 216 F.3d 918, 923 (10th Cir. 2000).  It is intended for those rare situations "where the State has convicted the wrong person of the crime. . . . [Or where] it is evident that the law has made a mistake."  Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).

## III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires that a habeas court apply a "highly deferential standard" under 28 U.S.C. § 2254, one that "demands that state-court decisions be given the benefit of the doubt."  Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotation marks omitted). When a state court has adjudicated a claim on the merits, a federal court cannot grant relief on that claim under § 2254 unless the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  The Supreme Court has emphasized that "review under § 2254(d)(1) focuses on what a state court knew and did"; thus, "[s]tate-court decisions are measured against [Supreme Court] precedents as of the time the state court renders its decision."  Pinholster, 563 U.S. at 182 (internal quotation marks omitted).  "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the

dicta, of th[e] Court's decisions . . . ." Williams v. Taylor, 529 U.S. 362, 412 (2000).  Federal courts may not "extract clearly established law from the general legal principles developed in factually distinct contexts," House v. Hatch, 527 F.3d 1010, 1016-17 n.5 (10th Cir. 2008), and Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings," id. at 1015, 1016-17.

A state court decision is "contrary to" the Supreme Court's clearly established precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams, 529 U.S. at 405-06.  It is not necessary that the state court cite, or even be aware of, applicable Supreme Court decisions, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam).  A state court decision is an "unreasonable application" of Supreme Court precedent if the decision "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08.  A court assesses "objective[ ] unreasonable[ness]," id. at 409, in light of the specificity of the rule: "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).  "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." Williams, 529 U.S. at 410.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

Review of substantive rulings under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181; see Black v. Workman, 682 F.3d 880, 895 (10th Cir. 2012) (discussing § 2254 review of state-court merits decisions after Pinholster); Fairchild v. Trammell, 784 F.3d 702, 711 (10th Cir. 2015). And a federal court must accept a fact found by the state court unless the defendant rebuts the finding "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has emphasized in the strongest terms the obstacles to relief, observing that § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (internal quotation marks omitted). To obtain relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 102. Thus, "even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable." Id. at 88.

Although federal court deference to the state court's decision is appropriate only on claims "adjudicated on the merits," 28 U.S.C. § 2254(d), the petitioner has the burden of showing that the claim was not so adjudicated. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99; accord Johnson v. Williams, 133 S. Ct. 1088, 1094 (2013) (finding that, where a federal claim is presented to a state court and relief is denied without discussion of the claim, the presumption of a merits adjudication is rebuttable). "Where there is no indication suggesting that

14

the state court did not reach the merits of a claim, we have held that a state court reaches a decision on the merits even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion." Dodd v. Trammell, 753 F.3d 971, 983 (10th Cir. 2013) (ellipsis and internal quotation marks omitted); see Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999) ("we owe deference to the state court's result, even if its reasoning is not expressly stated"). Under AEDPA, "a habeas court must determine what arguments or theories supported or . . . could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Richter, 562 U.S. at 102.

## CLAIMS FOR RELIEF

### I.  Ineffective assistance of counsel (Ground 1)

As his first ground of error, Goode claims that he received ineffective assistance of counsel at trial, at sentencing, and on appeal.  He divides his claim into two primary subclaims.  In his first subclaim, he alleges that trial counsel failed to conduct a constitutionally adequate mitigation investigation.  In his second subclaim, he alleges that trial counsel failed to investigate and present relevant exculpatory evidence.  Goode cites Strickland v. Washington, 466 U.S. 668, 694 (1984), and claims that "but for prior counsels' unprofessional errors, there is a reasonable probability Mr. Goode would not have been convicted or sentenced to death."  (Dkt. # 18 at 12).  In response, Respondent claims that most of Goode's claims are procedurally barred and that the OCCA's resolution of claims properly raised in state court was not contrary to or an unreasonable application of federal law as determined by the Supreme Court.  (Dkt. # 27 at 9).

15

To be entitled to habeas corpus relief on a claim of ineffective assistance of counsel, Goode must demonstrate that the OCCA's adjudication of this claim involved an unreasonable application of Strickland.   Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial.  Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).  A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  A federal habeas court may intercede only if the petitioner can overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190.  If Petitioner is unable to show either "deficient performance" or

"sufficient prejudice," his claim of ineffective assistance fails.  Strickland, 466 U.S. at 700.  Thus, it is not always necessary to address both Strickland prongs.

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999).  If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance.  Cargle v. Mullin, 317 F.3d 1196, 1201 (10th Cir. 2003).

### A.     Claims raised on direct appeal

### 1.     Failure to investigate and present available mitigation witnesses

As stated above, Goode alleges, as a broad category of ineffective assistance of counsel, that trial counsel failed to conduct a constitutionally adequate mitigation investigation. (Dkt. # 18 at 12). Within this broad category, Goode claims that family members, acquaintances, and co-workers were available to testify as mitigation witnesses, but trial counsel provided ineffective assistance in failing to call the identified witnesses.  Id. at 32.  Goode first raised this claim on direct appeal.  Goode, 236 P.3d at 686-88.  In support of his claim on direct appeal, Goode presented twelve affidavits.  See Application for Evidentiary Hearing, OCCA Case No. D-2008-43, Exs. C-N.  The OCCA denied relief on this claim, finding as follows:

> Counsel called two witnesses in the second stage, Goode's mother, Margaret Goode, and his fiancé [sic], Larenda [sic] Carter.  This testimony, along with the first stage testimony of coworker Teresa Sharpe, formed the basis of Goode's mitigation evidence, which was outlined in an instruction to the jury.
>
> In this case, Goode cannot show that he was prejudiced by the absence of additional mitigating evidence.  Most of the information provided in the affidavits was presented to the jury.  Goode's mother and fiancé testified about his good family background, his childhood, his participation in high school sports, and his devotion

to his family and children.  Goode's coworker testified about his employment and his ability to assist patients in the mental health ward at the hospital.

One affidavit describes Goode as coming from a good home, but upon reaching his teen years he began getting into trouble because he was influenced by peers. Affidavits from Goode's children describe their life with Goode in a very positive light. Coworkers' affidavits also describe him as a good worker. Other friends describe Goode as a good person while around them. Much of Goode's proposed additional mitigation evidence was cumulative to that presented to the jury. Even if trial counsel had presented all of the mitigating witnesses now proposed, there is no reasonable probability that the outcome of the trial would have been different. Goode has, therefore, failed to show by clear and convincing evidence there is a strong possibility that counsel was ineffective, and he has failed to establish the need for an evidentiary hearing, thus the application for an evidentiary hearing is denied, and Goode's claims of ineffective assistance are also denied.

Goode, 236 P.3d at 688.

The OCCA resolved the ineffective assistance claim under the prejudice prong of Strickland. Thus, to be entitled to habeas relief, Goode must overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. When a petitioner alleges ineffective assistance of counsel stemming from a failure to investigate mitigating evidence at a capital-sentencing proceeding, "we evaluate the totality of the evidence – both that adduced at trial, and the evidence adduced in habeas proceedings." Smith v. Mullin, 379 F.3d 919, 942 (10th Cir. 2004) (quoting Wiggins v. Smith, 539 U.S. 510, 536 (2003)). This includes weighing "the evidence in aggravation against the totality of available mitigating evidence." Hooks v. Workman, 689 F.3d 1148, 1202 (10th Cir. 2012). "In a system like Oklahoma's, where only a unanimous jury may impose the death penalty, the question is whether it's 'reasonably probabl[e] that at least one juror would have struck a different balance.'" Grant v. Trammell, 727 F.3d 1006, 1018-19 (10th Cir. 2013) (quoting Wiggins, 539 U.S. at 537).

Here, there was no substantial probability, let alone a conceivable one, that one juror (or more) would have voted against the death penalty had counsel not failed to call Goode's other witnesses as identified on direct appeal.  See Richter, 562 U.S. at 112 (defining reasonable probability as the likelihood of a different result being "substantial, not just conceivable").  During both the first and second stages of trial, Margaret Goode, Goode's mother, and LaKendra Carter, Goode's fiancée, testified about his childhood, the importance of his family, his strong ties to his four children, his ability to care for and nurture people suffering illness, his strong work ethic, and his participation in high school sports.  See Tr. Vol. VII at 1326-36, 1359-74; Tr. Vol. IX at 1764-80, 1781-90.  In addition, during the first stage, Teresa Sharp, Goode's coworker at Brookhaven Hospital, testified about his employment and his ability to provide experienced care and assistance to patients in the mental health ward at the hospital.  See Tr. Vol. VII at 1351-58.  The additional mitigating evidence presented to the OCCA on direct appeal focused on Goode's kindness to family members, including his children, to friends, and to co-workers, and did not differ significantly in kind from the mitigating evidence presented at trial.  The Court agrees with the OCCA's conclusion that, even if trial counsel had presented all of the mitigating witnesses proposed in the claim raised on direct appeal, there was no substantial probability, let alone a conceivable one, that one juror (or more) would have voted against the death penalty.  See Williams v. Trammell, 782 F.3d 1184, 1215 (10th Cir. 2015); Lockett v. Trammel, 711 F.3d 1218, 1233 (10th Cir. 2013).  Therefore, Goode cannot satisfy the prejudice prong of Strickland and has failed to demonstrate entitlement to habeas corpus relief under 28 U.S.C. § 2254(d).  Habeas corpus relief shall be denied on this claim of ineffective assistance of counsel.

Goode also states that "[i]n the course of preparing his Petition for Writ of Habeas Corpus, Mr. Goode has developed a plethora of additional mitigating evidence. Evidence which stands in stark contrast to the good life/good upbringing themes presented by prior counsel; evidence which was available to prior counsel but was not uncovered due to prior counsels' [c]onstitutionally deficient investigations" (Dkt. # 18 at 33). The evidence cited in support of this habeas claim was first presented to the OCCA in Goode's third application for post-conviction relief and is discussed in subsection C, below.

## 2.    Failure to impeach crucial witness Ronald "Bunny" Thompson

Goode also alleges that counsel provided ineffective assistance in failing "to impeach Bunny Thompson's testimony with statements Bunny had made to Douglas Miller[3] and also Damos Joseph's denials that he had helped the perpetrators dispose of weapons used in the homicides" (id. at 39). Goode raised this claim on direct appeal and provided Miller's affidavit and a supplemental police report, prepared by Detective Felton, to support his claim. See Application for Evidentiary Hearing, OCCA Case No. D-2008-43, Exs. A, B-1. The OCCA characterized the information with regard to Miller and Joseph as "suspect," and determined that:

> None of this information provides "clear and convincing evidence" that shows "a strong possibility trial counsel was ineffective." In other words the information does not adequately show that counsel's conduct fell below reasonable standards of conduct, or that the failure to utilize this evidence prejudiced Goode. See *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Simpson v. State*, 2010 OK CR

---

[3]    In his affidavit, Douglas Miller states he was housed in the cell adjacent to Ronald Thompson's cell at the Tulsa County Jail. See Application for Evidentiary Hearing, OCCA Case No. D-2008-43, Ex. A at ¶ 1. He avers that Thompson told him that, because he was "fucked up on zanex and exacty," "he really did not remember" what happened during the murders, but that he decided he would blame Goode and Johnson because "he didn't want them to put it on him." Id. at ¶ 3.

6, ¶ 53, 230 P.3d 888 (holding that this clear and convincing standard is less onerous that the standard set forth in *Strickland*).

Goode, 236 P.3d at 687.

Again, Goode has failed to overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. First, nothing in the record suggests that trial counsel performed deficiently in failing to discover and interview Miller, a prisoner housed near Ronald Thompson while at the Tulsa County Jail.  In addition, with regard to Joseph's statements contained in the supplemental police report, the Court agrees with the OCCA's conclusion that, even if trial counsel had used the information, as presented to the OCCA on direct appeal, there is no reasonable probability that the outcome of the trial would have been different.  Therefore, Goode cannot satisfy the standards set forth in Strickland and § 2254(d).  He is not entitled to habeas corpus relief on this claim of ineffective assistance of counsel.

**B.     Claims raised in first application for post-conviction relief**

**1.     Failure to request a continuance due to effects of major ice storm**

As part of Ground 7, discussed below, Goode alleges that trial counsel provided ineffective assistance in failing to request a continuance because of the impact of a major ice storm on the City of Tulsa.  See Dkt. # 18 at 108.  Goode raised this claim in his original application for post-conviction relief, OCCA Case No. PCD-2008-211, at 21-24.  The OCCA rejected the claim, finding that "Goode has made no showing of actual prejudice from counsel's failure to request a continuance and the failure to raise this issue on direct appeal.  Thus his claim of ineffective assistance must fail, and this proposition is denied."  Opinion Denying Petitioner's Original Application for Post-Conviction Relief, Case No. PCD-2008-211 at 6.

Once again, Goode has failed to overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. The Court agrees with the OCCA's conclusion that Goode has not satisfied the prejudice prong requiring him to demonstrate a reasonable probability that the result of his trial or his appeal would have been different had trial counsel requested a continuance or had appellate counsel challenged trial counsel's failure to seek a continuance because of the ice storm.

Generally, a trial court is vested with wide discretion when considering whether or not to continue a trial. Ungar v. Sarafite, 376 U.S. 575, 591 (1964) (finding no violation of due process in trial judge's denial of a continuance based on, inter alia, a snowstorm). In Ungar, the Supreme Court stated that circumstances justifying a continuance "are, of course, arguable, and other judges in other courts might well grant a continuance in these circumstances. But the fact that something is arguable does not make it unconstitutional. Given the deference necessarily due a state trial judge in regard to the denial or granting of continuances, we cannot say these denials denied [defendant] due process of law." Id. "Absent proof of a violation of a specific constitutional protection, a [petitioner] must show that a trial error was so egregious as to deprive him of a fundamentally fair adjudication, thus violating constitutional principles of due process." Powell v. Collins, 332 F.3d 376, 396 (6th Cir. 2003). A petitioner must establish that the failure to continue the trial resulted in actual prejudice to his defense. Id.

In this case, Goode fails to explain how his defense was prejudiced when his trial was not continued because of the ice storm. The Court recognizes that, in support of this claim as raised in his first application for post-conviction relief, Goode presented the affidavit of his attorney, Stanley Monroe. See Application for Post-Conviction Relief, OCCA Case No. PCD-2008-211, Ex. 4. In

22

his affidavit, Monroe stated that he had no electricity at his home for eight days following the ice storm. As a result, he was unable to work at home and he had to draft his closing argument at the courthouse while the trial was in recess. Id. at ¶ 8. Monroe also states that he observed "almost everyone connected to this trial . . . experienc[ed] the same difficulties as me," id. at ¶ 9, and that "[d]espite my best efforts, I do not believe that I could have provided 100% of my abilities toward defending Mr. Goode, because basic, day-to-day survival presented enormous difficulties," id. at ¶ 10.

However, in his habeas petition, Goode fails to cite any specific facts or authority for the proposition that the failure to continue his trial was so prejudicial that it constitutes a constitutional deprivation. Further, upon review of the trial record, the Court finds nothing to suggest that the trial was rendered fundamentally unfair as a result of the ice storm. The record reflects that, on December 10, 2007, after the ice storm struck, the trial judge stated, outside the presence of the jury, that one juror, Michael Colbert, was "involved in some emergency business going on with the storm." See Tr. Vol. VI at 1171. However, by the time the jury entered the court room, the trial judge stated "[l]et's show that we're on the record. the parties, the defendant is present, as are the jurors. Thank you all. I know it was tough to get here." Id. at 1172. The trial then proceeded with the State calling its next witness. In addition, on December 11, 2007, just prior to the State resting its case, the following exchange took place, outside the presence of the jury:

> Mr. Edwards: Procedurally, Judge, we do have witnesses present right now. Because of the ice storm and the loss of electricity over most of Tulsa at this time, we are having a little bit of difficulty getting people in. I do think we will have them in, but I do want to let the Court be aware of that.

| The Court: | You've said that before and we're lucky this didn't strike sooner or we would have been dealing with the State in the same deal. |
|---|---|
| Mr. Edwards: | So if the Court will just bear with us, we may need breaks as the morning goes on. |
| The Court: | And I'll – let me ask you.  Wouldn't you want for me to tell the jury that because of the power outages and the like that we might be not moving as swiftly as we might otherwise do – |
| Mr. Edwards: | That would be fine. |
| The Court: | – and there might be some breaks and that sort of thing? |

Tr. Vol. VII at 1319.  The trial judge and defense counsel reviewed the anticipated witnesses and defense counsel stated "[w]e're in pretty good shape."  Id. at 1322.  The jury then entered and the defense began to present its case.  Although short recesses were taken at times to accommodate witnesses, see, e.g., id. at 1444, no witness for the defense was unable to testify because of the ice storm.  In addition, with the exception of defense witness Richard Meulenberg, who stated he was currently assigned to "the disaster response team" and that he had been awake for thirty hours prior to testifying, see id. at 1544, 1549, nothing in the record suggests that any witness had been negatively impacted by the ice storm.

Nor does the record reflect that the jury was negatively impacted by the ice storm.  One juror, Mr. Colbert, was excused because he kept falling asleep during the trial.  See Tr. Vol. VIII at 1566-69.  However, while the stress of the ice storm may have impacted sleep patterns, the record reflects that Mr. Colbert slept even before the ice storm struck.  See Tr. Vol. VII at 1375.  In addition, Goode fails to cite evidence suggesting that he was deprived of an impartial jury.  Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (stating that a criminal defendant in state court is guaranteed an "impartial

jury" by the Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process); Ross v. Oklahoma, 487 U.S. 81, 85 (1988).

Upon review of the record, the Court finds that Goode has not demonstrated a reasonable probability that the results of his trial or appeal would have been different but for trial counsel's failure to request a continuance and appellate counsel's failure to raise the claim on direct appeal. Because Goode fails to satisfy the prejudice prong of Strickland, he cannot overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. Goode is not entitled to habeas corpus relief on this claim of ineffective assistance of counsel.

Rather than explain how he was prejudiced when counsel failed to request a continuance because of the ice storm, Goode argues that the failure to continue the trial was structural error, considered per se prejudicial. (Dkt. # 18 at 106). Goode maintains that, because the OCCA did not address his structural error claim, this Court may review the claim de novo. Id. at 105; see also Dkt. # 31 at 49. The Court rejects Goode's arguments. First, the Court finds that the OCCA's ruling is entitled to deference even though the state appellate court did not specifically address Goode's structural error claim. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. Goode presented his structural error claim to the OCCA where relief was denied. In the absence of any reason suggesting that the OCCA did not deny relief on the structural error argument, this

Court presumes the OCCA adjudicated the claim on the merits and the ruling is entitled to deference under 28 U.S.C. § 2254(d).[4]

"Most constitutional mistakes call for reversal only if the government cannot demonstrate harmlessness." Glebe v. Frost, 135 S. Ct. 429, 430 (2014) (citing Neder v. U.S., 527 U.S. 1, 8 (1999)). "Only the rare type of error – in general, one that infect[s] the entire trial process and necessarily render[s] [it] fundamentally unfair – requires automatic reversal." Id. (internal quotation marks omitted). A structural error affects the entire conduct of the trial from beginning to end. Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991) (recognizing that the total deprivation of the right to counsel or an impartial judge are examples of structural error). However, it is first necessary to find constitutional error before categorizing it as structural or not. Sixth Amendment violations that do not pervade the entire proceeding are subject to harmless error review. U.S. v. Lott, 433 F.3d 718, 722 (10th Cir. 2006).

In this case, Goode fails to demonstrate that a constitutional error resulted from the failure to continue his trial after the ice storm. In addition, Goode's trial commenced on December 3, 2007, and concluded on December 13, 2007. The ice storm struck mid-trial, during the weekend of December 8-9, 2007. Thus, even if trial counsel's failure to request a continuance rose to the level of a Sixth Amendment violation, it was not "structural error" because it did not "pervade the entire proceeding," and it is subject to harmless error review. Further, no Supreme Court case clearly requires placing a failure to continue a trial due to a weather event in the narrow category of errors considered "structural." For those reasons, the OCCA's denial of relief on Goode's claim of "structural error" is not contrary to, or involve an unreasonable application of, clearly established

---

[4]    Even if reviewed de novo, the Court finds Goode's claim of structural error fails.

federal law, as determined by the Supreme Court.  Goode is not entitled to habeas corpus relief on his structural error argument.

### 2.   Failure to present evidence of sexual abuse and substance dependence

Goode also claims that trial and direct appeal counsel provided ineffective assistance in failing to present issues with regard to his "substance abuse and sexual abuse incurred as a child." (Dkt. # 18 at 29).  Goode raised this claim in his original application for post-conviction relief, OCCA Case No. PCD-2008-211, at 25-30.  The OCCA denied relief, finding as follows:

> In proposition three, Goode claims that counsel was ineffective for failing to present additional mitigating evidence.  This is essentially the same argument that was raised on direct appeal, except for the fact that this proposition raises allegations regarding Goode's use of Xanax and its effect on the mind and body and a hearsay reference to possible sexual abuse at the hands of two cousins when Goode was between five and seven years old.

> Three of the affidavits here are from persons who submitted affidavits for direct appeal:  Goode's son and daughter, Marquis and Marqisha Goode and Penny Avans.  In as much as these affidavits are substantially the same as those proffered on direct appeal, the argument regarding these potential mitigation witnesses is barred.

> Goode's other affidavits are used to support his complaint that trial counsel should have used facts regarding his abuse of the drug Xanax and facts regarding his childhood as mitigation evidence.  He has attached affidavits explaining how Xanax can affect a person's behavior by lowing [sic] inhibitions and clouding judgment. He also has attached affidavits explaining how his childhood experiences, including child abuse, could affect his later behavior.

> Goode offers no affidavits indicating whether or not trial counsel or direct appeal counsel knew of this evidence.  As this evidence was obviously readily available to previous counsel through reasonable investigation, Goode must rely on the ineffective assistance argument.

> There was no evidence that Goode was under the influence of Xanax at the time of these crimes and Goode presents no new evidence indicating that he was. Also, Goode has presented no evidence regarding the effect of his childhood experiences on him specifically.  Without these pieces of evidence, Goode cannot show that the outcome of his trial would have been different.  Further, Goode has

presented no evidence that he has been examined by any type of expert to show that his childhood experiences would assist him in mitigation.

Goode has presented nothing here which persuades this Court to conclude that had trial counsel utilized this evidence, the outcome of his trial would have been different. Therefore, this proposition must fail.

Opinion Denying Petitioner's Original Application for Post-Conviction Relief, Case No. PCD-2008-211 at 7-8.

Once again, Goode has failed to overcome the "doubly deferential" hurdle resulting from application of the standards imposed by § 2254(d) and Strickland. Pinholster, 563 U.S. at 190. Significantly, and as the OCCA noted, nothing in the trial record suggests that Goode was under the influence of Xanax at the time of the murders. The evidence demonstrated Goode was involved in selling drugs, including Xanax, Tr. Vol. V at 931, and Chastain testified that Goode had a prescription for and took Xanax, id. at 1030. However, none of the witnesses testified that, at the time of the murders, Goode was addicted to Xanax or any other drug as alleged in the first application for post-conviction relief. In contrast, multiple witnesses testified that Ronald Thompson was under the influence of drugs at the time of the murders. Id. at 927, 1047.

Even if Goode was known to abuse Xanax, in the absence of evidence demonstrating that he was under the influence of Xanax at the time of the murders, he cannot show a reasonable probability that the outcome of his trial would have been different had the drug use evidence been presented. Similarly, no evidence suggests that the alleged incidents of sexual abuse Goode suffered as a child in any way affected his behavior resulting in the murders. As a result, he cannot show that trial counsel performed deficiently in failing to present the evidence or a reasonable probability that the outcome of his trial would have been different had the evidence of childhood sexual abuse and

substance dependence been presented.  Therefore, Goode cannot satisfy the <u>Strickland</u> standard and he has failed to demonstrate entitlement to relief under 28 U.S.C. § 2254(d).

### C.        Claims first raised in third application for post-conviction relief

In his petition for writ of habeas corpus (Dkt. # 18), Goode raises four additional claims of ineffective assistance of counsel at trial, sentencing, on appeal, and during post-conviction proceedings that were all first presented to the OCCA in his third application for post-conviction relief, OCCA Case No. PCD-2012-261.  Three of these additional claims are part of Goode's broad claim that his trial counsel failed to conduct a constitutionally adequate mitigation investigation. Specifically, he claims that:  (1) trial counsel failed to assemble a qualified capital defense team, as required by the American Bar Association *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases* (the Guidelines) (Dkt. # 18 at 15); (2) trial counsel failed to properly prepare and utilize expert penalty stage witness, Wanda Draper, Ph.D.  (<u>id.</u> at 17); and (3) trial counsel failed to investigate known and documented mental health disorders, including "major depression, substance dependence, and post-traumatic stress disorder" (<u>id.</u> at 23).  In a fourth claim, Goode alleges that trial counsel provided ineffective assistance when they failed to investigate and develop a "complete" alibi for the crucial time period (<u>id.</u> at 43).

In considering the broad claim of ineffective assistance of counsel raised in the third application for post-conviction relief, the OCCA stated that the claim was "primarily based on a recent psychiatric report and the failure of previous counsel, including post-conviction counsel, to request and utilize similar mitigation evidence in the prior proceedings."  Opinion Denying Petitioner's Successive Application for Post-Conviction Relief, Case No. PCD-2012-261 at 3.  The

OCCA, relying on Okla. Stat. tit. 22, § 1089(D)(8), and Rule 9.7(G)(3), *Rules of the Oklahoma*

*Court of Criminal Appeals*, denied post-conviction relief, finding as follows:

> Although this subsequent post-conviction application was filed within sixty (60) days of the psychiatric report, nothing in the report contains evidence which was not discoverable through the exercise of reasonable diligence by prior counsel. This Court, therefore, is barred from considering the merits of the claim, and the claim is waived. In order to overcome procedural bars and waiver, Goode argues[] that his State provided post-conviction counsel were constitutionally ineffective and, moreover, the failure of this Court to review his claims would create a miscarriage of justice. As Goode raised claims of ineffective assistance of trial counsel during direct appeal and ineffective assistance of direct appeal counsel in his previous post-conviction applications, he is now barred from urging those issues once again.

> The claim remains waived unless Goode can show that post-conviction counsel was deficient in his failure to address the underlying claim and that he was prejudiced by the deficiency.

> The evidence contained in this application is not clearly mitigating. Good [sic] cannot show a reasonable probability that the evidence would have impacted the jury's weighing of the aggravating and mitigating evidence. The evidence of mental health issues caused by Goode's chronic substance abuse and a history of exposure to a violent environment could lead the jury to a negative perception of Goode just as easily as the jury might find it mitigating. This evidence, moreover, would have exposed Goode's deeply ingrained involvement in violent gang activity, including shootings, stabbings, drug dealing, and other nefarious activities.

> This evidence, combined with the violent nature of this crime, the gratuitous killing of an entire young family in an attempt to garner some type of revenge, while seeking another intended target, would not have caused this jury to determine that the mitigating evidence outweighed the aggravating circumstances. The evidence would have bolstered the fact that Goode is a continuing threat to society.

> In view of the nature of this evidence, we cannot conclude that Goode has demonstrated a reasonable probability that the jury would have reached a different sentencing decision. This reasoning leads us to a finding that Goode's post-conviction counsel was not ineffective for failing to raise an issue claiming ineffective assistance of previous counsel for failing to utilize this evidence.

> Affidavits supporting Goode's alleged alibi defense are outside the sixty (60) day requirements for newly discovered evidence; therefore, this aspect of Goode's claim is barred.

30

Id. at 3-6 (citations and footnote omitted).

Clearly, the OCCA imposed a procedural bar on the claims of ineffective assistance of counsel first raised in the third application for post-conviction relief. The OCCA stated at least four times that the claims were waived and/or barred under state law. Id. at 4, 6. In his reply to the response to the petition, Goode refers to the "Valdez gloss"[5] and argues that the OCCA's procedural rulings are neither adequate to preclude federal habeas review nor independent of federal law. See Dkt. # 31 at 4, 11. Respondent filed a surreply (Dkt. # 39), responding to Goode's claims concerning the adequacy and independence of the OCCA's procedural bar imposed on the claims raised in the third application for post-conviction relief.

The Court finds Respondent has satisfied the burden of proof and has demonstrated that the OCCA's procedural bar is independent and adequate to preclude habeas corpus review. See Bonney v. Wilson, 817 F.3d 703, 708 (10th Cir. 2016) (citing Hooks v. Ward, 184 F.3d 1206, 1216-17 (10th Cir. 1999)). Therefore, the Court rejects Goode's arguments and finds that, under the governing standards discussed in General Considerations, Part II, the OCCA's procedural bar is independent and adequate to preclude federal habeas corpus review. See Walker v. Martin, 562 U.S. 307, 316 (2011) (finding that "a discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review" (quoting Beard v. Kindler, 558 U.S. 53, 60 (2009))); Fairchild, 784 F.3d at 719 (explicitly finding that, even where the OCCA reports that defendant invoked Valdez, the procedural bars resulting from application of § 1089 and Rule 9.7(G)(3) were independent of federal

---

[5]     Valdez v. State, 46 P.3d 703, 710 (Okla. Crim. App. 2002) (stating that, even when a prisoner has failed to comply with procedural requirements, the OCCA has the "power to grant relief when an error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right").

law); Banks v. Workman, 692 F.3d 1133, 1145 (10th Cir. 2012) (concluding that Oklahoma's procedural bar is independent of federal law, notwithstanding the OCCA's power to excuse default in "extreme cases").  Furthermore, while the Court recognizes the need to be particularly vigilant in analyzing the adequacy of Oklahoma's procedural bar as applied to claims of ineffective assistance not raised on direct appeal, see generally English v. Cody, 146 F.3d 1257, 1263-65 & nn. 5-6 (10th Cir. 1998), these claims were first presented to the OCCA in Goode's third application for post-conviction relief.  The Tenth Circuit has affirmed the adequacy of the Oklahoma procedural bar as applied to claims that could have been, but were not, raised in an initial state application for post-conviction review.  Cannon v. Gibson, 259 F.3d 1253, 1266 (10th Cir. 2001) (citing Thomas v. Gibson, 218 F.3d 1213, 1221-22 (10th Cir. 2000); Medlock, 200 F.3d at 1323; Smallwood v. Gibson, 191 F.3d 1257, 1267-69 (10th Cir. 1999); Moore v. Reynolds, 153 F.3d 1086, 1097 (10th Cir. 1998)).  Accordingly, Goode's claims of ineffective assistance of counsel first raised in his third application for post-conviction relief are procedurally barred and federal habeas review is precluded unless Goode establishes cause and prejudice or a fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

As cause to overcome the procedural bar, Goode argues that his court-appointed post-conviction counsel provided ineffective assistance in failing to raise the defaulted claims.  The OCCA reviewed the merits of the underlying claims of ineffective assistance of counsel, and determined – citing Smith v. State, 245 P.3d 1233, 1236-37 (Okla. Crim. App. 2010), Strickland, 466 U.S. 668, and Wiggins, 539 U.S. at 521 – that post-conviction counsel did not provide ineffective assistance in failing to raise the claims in Goode's prior applications.  Opinion Denying

Petitioner's Successive Application for Post-Conviction Relief, Case No. PCD-2012-261 at 5-6. That ruling is entitled to AEDPA deference.

For the reasons discussed below, the Court finds Goode has failed to demonstrate that the OCCA's adjudication of his claim of ineffective assistance of post-conviction counsel was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. As a result, any ineffectiveness of post-conviction counsel does not establish cause to excuse Goode's default of his claims of ineffective assistance of trial and direct appeal counsel raised in his third application for post-conviction relief.

First, contrary to Goode's assertion that his defense team lacked a "mitigation specialist," the defense team included Wanda Draper, Ph.D. Goode's defense team retained Dr. Draper "for the ultimate purpose of persuading a jury to spare Mr. Goode's life if he was convicted of first degree murder." See Dkt. # 18-5, Affidavit of Wanda Draper, Ph.D., at ¶ 2. Dr. Draper prepared a report, see Dkt. # 18-6, and was prepared to testify during the sentencing phase of Goode's trial. See Tr. Vol. IX at 1793-1801. Although Goode argues that Dr. Draper was not hired as a "mitigation specialist," he fails to convince the Court that Dr. Draper did not adequately fulfill that role. See Williams, 782 F.3d at 1215 (rejecting claim of ineffective assistance of counsel for failure to hire a "mitigation specialist" where Dr. Draper had been hired). Therefore, post-conviction counsel did not perform deficiently in failing to raise claims of ineffective assistance of trial and direct appeal counsel with regard to the alleged failure to assemble a qualified capital defense team, including a "mitigation specialist."

Second, as to Goode's claim that trial counsel failed to properly prepare and utilize Dr. Draper, the claim is contradicted by the record. Dr. Draper based her report on "interviews with the

defendant and the defendant's mother, brother, significant others, two children, friends, teacher, church pastor; review of available school, medical, and legal records; and other data provided by the defense team." See Dkt. # 18-6 at 1. The trial judge made an extensive record with regard to defense counsels' decision not to call Dr. Draper during the sentencing stage. See Tr. Vol. IX at 1793-1801. The trial record reflects that defense counsel believed "Dr. Draper would just affirm what has already been presented." Id. at 1795. In addition, the State noted that Dr. Draper's report referenced Goode's gang affiliation and that the prosecution was prepared to cross-examine extensively and call a rebuttal witness to "testify and authenticate Goode's gang affiliations." Id. at 1799. The proposed rebuttal witness, Sgt. Van Ellis, would have established that Goode was the person in the Wal-Mart security video wearing a light blue outfit, signifying his gang membership. Id. After hearing from defense counsel and the prosecution, Goode confirmed for the trial judge that the decision not to call Dr. Draper was his own decision and that his counsel had not forced him to make the decision. Id. at 1801.

Because trial counsel's mitigation strategy was to present evidence demonstrating Goode's kindness to his family, friends, and co-workers, the evidence of substance abuse and gang membership would have brought to light Goode's history of violence and could have defeated counsels' theory of mitigation. Therefore, assuming without deciding that counsel performed deficiently for failing to present this type of mitigating evidence at the sentencing stage, Goode cannot demonstrate a reasonable probability that the evidence would have affected the jury's weighing of the aggravating and mitigating evidence. Wackerly v. Workman, 580 F.3d 1171, 1178 (10th Cir. 2009) (discussing "double edged nature" of this type of evidence and listing cases). Defense counsels' decision not to call Dr. Draper was based on sound trial strategy and was

34

reasonable.  Jones v. Page, 76 F.3d 831, 846 (7th Cir. 1996) (finding that counsel's failure to introduce evidence of petitioner's drug abuse was a reasonable strategic choice because such evidence was a "double-edged sword").  Post-conviction counsel did not perform deficiently in failing to raise claims of ineffective assistance of trial and direct appeal counsel with regard to preparation and utilization of Dr. Draper.

Third, as to the claim that trial counsel failed to investigate known and documented mental health disorders, including "major depression, substance dependence, and post-traumatic stress disorder," Goode relies on the psychiatric report of Manuel Saint Martin, M.D., J.D. (Dkt. # 18-7), and numerous affidavits of family members and friends, including fellow gang members (Dkt. ## 18-12 through 18-23).  Goode presented all of this evidence, including Dr. Martin's report, to the OCCA in support of his third application for post-conviction relief.  However, as the OCCA noted, had this evidence been presented during Goode's second stage proceeding, the jurors may have considered the evidence of Goode's mental health issues caused by his chronic substance abuse and a history of exposure to a violent environment as aggravating rather than mitigating.  In other words, the evidence could have bolstered the jury's belief that he is a continuing threat to society.  See, e.g., Wackerly, 580 F.3d at 1178-80 (rejecting ineffective assistance of counsel claim and recognizing that evidence of substance abuse and mental health problems could be harmful to mitigation case); Gilson v. Sirmons, 520 F.3d 1196, 1244-1250 (10th Cir. 2008); Cannon, 259 F.3d at 1278 (finding that evidence demonstrating lack of impulse control could have strengthened the state's evidence of future dangerousness).

Furthermore, although "counsel must conduct a full investigation and pursue reasonable leads when they become evident," Wilson v. Sirmons, 536 F.3d 1064, 1084 (10th Cir. 2008), nothing

in the record suggests that anyone interviewed by the defense team, including Goode, his mother, and his fiancée, informed the team of Goode's mental health issues. As a result, counsel cannot be faulted. See Smith v. Workman, 550 F.3d 1258, 1272 (10th Cir. 2008) (stating that "counsel cannot be faulted for failing to raise claims as to which the client has neglected to supply the essential underlying facts . . . because clairvoyance is not required of effective trial counsel"). The Court also notes that, in her report, Dr. Draper averred that she had reviewed available medical records. See Dkt. # 18-6 at 1. Dr. Draper did not reference in her report any mental health issues purportedly reflected in those records. In fact, Dr. Draper used Goode's lack of "mental health deficiencies" to assert that he would not be a continuing threat. Id. at 9. The Court concludes that post-conviction counsel did not perform deficiently in failing to raise claims of ineffective assistance of trial and direct appeal counsel with regard to the omitted evidence.

Fourth, Goode argues that counsel was ineffective for failing to present the evidence of a "complete alibi," as developed and presented in the third application for post-conviction relief. That evidence consists of: (1) the affidavit of Michael Dewayne Scott, dated November 4, 2011, and (2) the affidavit of Chrystal Dabiri, dated December 9, 2011. See Dkt. # 18, Attachments 12, 24; Appendix of Attachments to the Successive Application for Post-Conviction Relief, Case No. PCD-2012-261, Attachments 12, 24. As discussed above, the OCCA imposed a procedural bar on this claim, stating that "[a]ffidavits supporting Goode's alleged alibi defense are outside the sixty (60) day requirements for newly discovered evidence; therefore, this aspect of Goode's claim is barred." Opinion Denying Petitioner's Successive Application for Post-Conviction Relief, Case No. PCD-2012-261 at 6.

36

Although the OCCA denied relief based on a procedural bar without analyzing whether Goode had overcome the procedural bar by arguing ineffective assistance of post-conviction counsel for failure to raise this claim in a prior post-conviction action, the Court finds that the OCCA's ruling is entitled to deference and that there is no possibility fairminded jurists could agree that the state court's decision conflicts with Supreme Court precedents. Richter, 562 U.S. at 102. Trial counsel was not ineffective for failing to present Goode's evidence of a "complete alibi." Both Scott and Dabiri aver that Goode visited them during the crucial three-hour period when the murders occurred. However, both affidavits were prepared more than six (6) years after the murders and, for that reason, lack credibility. In addition, other evidence presented at trial, including the Wal-Mart security videos and witness testimony, refute the averments in the affidavits. Significantly, as Respondent argued, see Dkt. # 27 at 50, even if the averments of Scott and Dabiri are true, they fail to establish that it would have been impossible for Goode to have committed the murders. Further, the affidavits undermine defense counsel's "partial alibi" defense, presented at trial through the testimony of Goode's mother, Margaret Goode, and his brother's girlfriend, Ruby Gilyard, implying that Goode stayed home during the night of the murders. See Tr. Vol. VII at 1327-28, 1338-40. Lastly, nothing in the record suggests that trial counsel knew about the information now brought to light by Scott and Dabiri. If their averments are true, Goode himself would have been aware of having visited Scott and Dabiri on the night of the murders and, presumably, would have eagerly told his defense team of his whereabout during the crucial time period. Nothing suggests that happened and counsel cannot be faulted. Smith, 550 F.3d at 1272. Therefore, post-conviction counsel did not perform deficiently in not raising claims of ineffective assistance of trial and appellate counsel for failing present the evidence allegedly supporting a "complete alibi."

For all of the reasons discussed above, the Court finds that Goode has not shown that the OCCA's conclusion that post-conviction counsel did not provide ineffective assistance was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Therefore, ineffective assistance of post-conviction counsel cannot serve as cause to overcome the procedural bar applicable to Goode's claims of ineffective assistance of trial and appellate counsel. Goode does not argue that a fundamental miscarriage of justice will occur if his claims are not considered. Therefore, the claims of ineffective assistance of counsel raised in the third application for post-conviction relief are denied as procedurally barred.

## II.  Violation of <u>**Brady v. Maryland**</u> (Ground 2)

In Ground 2, Goode claims that his constitutional rights were violated through the State's non-disclosure of impeachment material regarding former Tulsa Police Detective Jeff Henderson. (Dkt. # 18 at 44). He also argues that trial and direct appeal counsel were ineffective for failing to investigate and present evidence that would have undermined the veracity and credibility of Henderson. <u>Id.</u>

During the first stage of Goode's trial, Henderson testified that he found two spent .22 caliber casings and one live .22 caliber round in a vacant lot across the street from the house of Damos Joseph, also known as "Peanut." Tr. Vol. IV at 838-45. Henderson's testimony served to corroborate Ronald Thompson's testimony that he had tossed some .22 caliber ammunition in the vacant lot near Joseph's house. Tr. Vol. V at 925. Goode claims that, at the time of his trial in December 2007, Henderson was the subject of several complaints filed with the Tulsa Police Department's Internal Affairs Division. Later, in 2010, Henderson was indicted and tried on

corruption charges in this federal district court.  See N.D. Okla. Case No. 10-CR-117-BDB.[6]  On

August 24, 2011, Henderson was convicted by a jury of two (2) counts of civil rights violations, and

six (6) counts of perjury.  On December 6, 2011, Henderson was sentenced to a total term of forty-

two months imprisonment.

In his second application for post-conviction relief, filed on July 9, 2010, or before

Henderson's federal indictment, Goode cited Brady v. Maryland, 373 U.S. 83 (1963), and argued

that his due process rights were violated when the prosecution withheld evidence relevant to the

veracity and credibility of Officer Henderson.  See Second Application for Post-Conviction Relief,

OCCA Case No. PCD-2010-661 at 11.   He further argued that trial and direct appeal counsel were

ineffective for failing to investigate and present evidence that would have undermined Officer

Henderson's veracity and credibility.  Id. at 13.  The OCCA rejected Goode's claims, concluding

that "even if Henderson's testimony was impeached or if the evidence found by Henderson was

excluded from this trial, Goode would have suffered the same fate, beyond any doubt.  The facts of

this case are compelling."  Opinion Denying Second Application for Post-Conviction Relief, filed

September 28, 2010, in OCCA Case No. PCD-2010-661, at 4.  The OCCA explained as follows:

> These shell casings were not vital to the case against Goode, nor were they
> the only pieces of evidence corroborating Ronald Thompson's testimony. Thompson
> also testified that they threw latex gloves out of the car windows after the shooting,
> and latex gloves were found along the highway consistent with his testimony and
> statements to police.   Thompson testified about the three different caliber of
> handguns used in the murders, and evidence supporting that testimony was found at
> the scene and during the autopsy examination.

---

[6]      In support of his claim, Goode states that during the federal prosecution, "the government
disclosed that ' . . . since 1998, defendant Henderson has been the subject of thirty-three (33)
separate [Internal Affairs] complaints.'"  See Dkt. # 18 at 44 (citing N.D. Okla. Case No. 10-
CR-117-BDB, Dkt. # 250).

After disposing of the guns, co-defendant Kenneth Johnson drove the trio to Michelle Chastain's house, and although she did not see Thompson, she saw his Wal-Mart vest in the car and testified that Johnson drove Goode to her house, just as Thompson testified.

Not only was there plenty of additional corroborating evidence, besides the .22 caliber cartridges, Goode himself confessed to Michelle Chastain that he killed the victims.  He even provided specific details of the murders.  Needless to say, sufficient evidence existed, even absent evidence of these cartridges, to prove beyond a reasonable doubt that Goode was guilty of these crimes.

We conclude that, if Henderson's testimony had been completely impeached, or if the evidence regarding these specific cartridges had been excluded from the trial, the outcome of this trial would have been the same.  In reaching this conclusion, we must deny Goode's subsequent application for post-conviction relief, as the facts underlying the claims, even if taken as true, are not sufficient to establish that "no reasonable fact finder would have found the applicant guilty of the underlying offense or would have rendered the penalty of death."  [Okla. Stat. tit. 22, § 1089(D)(8)(b)(2) (Supp. 2008).]

Id. at 5-6.

The United States Supreme Court has stated that the prosecutor has a duty to disclose evidence favorable to an accused "even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing Brady, 373 U.S. at 87; U.S. v. Agurs, 427 U.S. 97, 107 (1976); U.S. v. Bagley, 473 U.S. 667, 676 (1985)).  "Such suppression of evidence amounts to a constitutional violation only if it deprives the defendant of a fair trial. . . . [A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." Bagley, 473 U.S. at 678.  The Supreme Court explained that the test for materiality of evidence is as follows: "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to

undermine confidence in the outcome." Id. at 682.  Suppression of exculpatory evidence by the state

"violates due process where the evidence is material either to guilt or to punishment, irrespective

of the good or bad faith of the prosecution."   Brady, 373 U.S. at 87.   Impeachment evidence

implicates a criminal defendant's due process rights when the reliability of a given witness may be

determinative of the defendant's guilt or innocence.  Giglio v. U.S., 405 U.S. 150, 154 (1972).

In this case, the Court has evaluated the materiality of the withheld evidence in light of the

entire record in order to determine if the omitted evidence creates a reasonable doubt that did not

otherwise exist. The Court finds Goode has failed to demonstrate the existence of a reasonable

probability that the State's failure to produce timely the evidence of the Tulsa Police Department

Internal Affairs Division's investigations of Officer Henderson resulted in a verdict unworthy of

confidence.  First, even if the prosecution possessed information before and during Goode's trial that

the Internal Affairs Division had conducted investigations of Officer Henderson, Goode has failed

to show how this Brady violation undermines confidence in the outcome of the trial.  Significantly,

Goode confessed his involvement in the murders to Chastain.  Tr. Vol. V at 1043, 1061-64.  In

addition, while the State used Henderson's testimony in its closing arguments as corroboration for

Ronald Thompson's accomplice testimony, Tr. Vol. VIII at 1649, 1712, it was one of several pieces

of corroboration evidence used in the State's closing arguments.  See id. at 1649-50, 1711-12.

Additional evidence corroborating Thompson's testimony included recovery of latex gloves inside

work gloves found along the Highway 169 ramp, as Thompson described.  Also, the Wal-Mart

surveillance video confirmed Thompson's testimony that Goode and Johnson picked him up from

work on the night of the murders and Thompson's identification of the caliber of handguns used in

the murders matched the crime scene and autopsy evidence.

While the evidence of prior Internal Affairs complaints may have served to impeach Officer Henderson's credibility, Goode has not demonstrated that the alleged failure to disclose this evidence, in violation of <u>Brady</u>, undermines confidence in the outcome of the trial.  Further, the OCCA's ruling that the error was not material in light of the other evidence presented at trial was not contrary to federal law.

The Court further finds that, because the underlying <u>Brady</u> claim lacks merit, trial and direct appeal counsel did not provide ineffective assistance of counsel with regard to the claim as Goode cannot establish the requisite prejudice.  <u>Strickland</u>, 466 U.S. at 687-88; <u>Dennis v. Poppel</u>, 222 F.3d 1245, 1250 (10th Cir. 2000) ("If the [underlying or constitutional] claims lack merit, [the petitioner] cannot claim prejudice from his attorney's failure to raise them at trial or on direct state appeal.").

Therefore, because Goode has failed to show that the OCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, his request for habeas relief on Ground 2 is denied.

## III.  Evidentiary rulings (Ground 3)

In Ground 3, Goode alleges that the trial judge's admission of misleading, irrelevant, and/or highly prejudicial evidence deprived him of due process and his right to a fundamentally fair trial. (Dkt. # 18 at 63).  Goode challenges both the admission of the recorded 911 call placed by Brenda Smalygo, mother of Tara Burchett-Thompson and grandmother of Kayla Burchett, <u>id.</u>, and the admission of evidence concerning a 9 mm handgun found in co-defendant Johnson's car when he was arrested, <u>id.</u> at 71.  Goode raised this claim on direct appeal.  <u>Goode</u>, 236 P.3d at 680-81, 682. As to the admission of the 911 tape, the OCCA ruled as follows:

42

We find no relevance to the conversation in this tape other than Smalygo's statement that her granddaughter is dead. This fact was undisputed and was clearly established by other evidence in this case. While the time of death might have been an issue, this conversation did nothing to establish a time of death. Because there was no relevance in this 911 tape, we find that the trial court abused its discretion in allowing the introduction of this tape

Although we find error, Goode must also show that the introduction of the tape was prejudicial. The introduction of irrelevant evidence does not always require relief . . . the jury had already heard from Smalygo whose emotional testimony described how she found the body of her dead granddaughter, Kayla, and how she attempted to revive her granddaughter by following the directions of the 911 operator. They learned that Kayla was living with Smalygo, but was at her mother's house that night, because she begged Smalygo to allow her to spend the night there. Although the tape contained a highly emotional Smalygo talking to a 911 operator, we cannot conclude that the contents of the tape prejudiced Goode in any material way. Therefore, the introduction of this tape was harmless.

Id. at 681 (citations and footnote omitted).

A state court conviction is not to be set aside on habeas review unless error was committed which had a substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). The Brecht standard applies where the petitioner asserts prejudicial error in the admission of evidence. Hooper v. Mullin, 314 F.3d 1162, 1174 (10th Cir. 2002). This Court agrees with the OCCA that, because it was undisputed that ten-year-old Kayla Burchett died of gunshot wounds along with her mother and step-father, and that Smalygo, Kayla's grandmother, discovered the bodies on August 26, 2005, the audiotape of Smalygo's 911 call was cumulative and, in light of the highly charged, emotional character of the audiotape, the trial judge abused his discretion in allowing introduction of the audiotape. However, the evidence against Goode was substantial and reflected Goode's callous disregard for the lives of the three victims, including ten-year-old Kayla. As a result, this Court cannot find that the introduction of the 911 tape

had a substantial and injurious effect or influence in determining the jury's verdict.  Goode is not entitled to habeas corpus relief on this claim.

Goode also alleges that the trial judge erred in admitting testimony regarding a 9 mm handgun, found during the arrest of co-defendant Johnson laying in the front seat of the vehicle. (Dkt. # 18 at 71).  Goode claims that "[t]he state put a very strong emphasis, albeit misleading, on Johnson's gun even though it wasn't shown to be one of the murder weapons." (Id. at 73).  The OCCA rejected this claim, finding that "[t]his gun did have some relevance, although slight, and served to corroborate Thompson's testimony that Johnson used a nine-millimeter during the murder. We find no reversible error in the introduction of this evidence." Goode, 236 P.3d at 682.

"[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks, 606 F.3d at 748.  In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." McGuire, 502 U.S. at 67-68.  "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes, 46 F.3d at 987 (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)); see also Martin v. Kaiser, 907 F.2d 931, 934 (10th Cir. 1990) ("errors in the admissibility of evidence are not grounds for habeas corpus relief absent fundamental unfairness so as to constitute a denial of due process of law").  "[B]ecause a fundamental-fairness analysis is not subject to clearly definable legal elements," when engaged in such an endeavor a federal court must "tread gingerly" and exercise "considerable self-restraint." Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (citation omitted).

The Court finds Goode has not made the necessary showing.  The record reflects that when police arrested Goode's co-defendant, Kenneth Dominick Johnson, they found a 9 mm handgun lying in plain view on the front passenger seat of the car he was driving.  Tr. Vol. IV at 857.  After obtaining a warrant, police recovered the 9 mm handgun and submitted it to the Oklahoma State Bureau of Investigation (OSBI), along with the 9 mm casings recovered at the scene of the shooting. The OSBI's firearms examiner testified that he could not say definitively whether the 9 mm gun recovered from Johnson's car was used in the homicides.  Id. at 810-11.  Goode complains that, despite the firearms examiner's testimony, the State nonetheless used the evidence to place the .357 handgun in Goode's hands, since Ronald Thompson testified that he fired a .22 caliber handgun and Johnson used a 9 mm handgun.

Based on the record, the Court finds that Goode fails to demonstrate that admission of testimony regarding the 9 mm handgun rendered his trial fundamentally unfair in violation of his right to due process.  As the OCCA noted, the 9 mm handgun was relevant because it demonstrated that, at the least, Johnson's weapon of choice was a 9 mm handgun, and thus served to corroborate Thompson's testimony that Johnson used a 9 mm gun during the murders.  Goode fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented at trial. Accordingly, habeas corpus relief on this claim is denied.

## IV.  Admission of Michelle Chastain's videotaped police interrogation (Ground 4)

In Ground 4, Goode claims that the trial judge's admission, over his objection, of Michelle Chastain's videotaped police interrogation deprived him of his rights to confrontation under the

Sixth Amendment and due process under the Fourteenth Amendment.  (Dkt. # 18 at 77).  Chastain

was Goode's girlfriend at the time of the murders.  She was also victim Mitch Thompson's sister

and Ronald Thompson's cousin.  Chastain testified for the prosecution during the first stage of trial

and described her statements given to police during her interviews.  Tr. Vol. V at 1077.  During the

defense case, the trial judge admitted the entire tape, citing Utt v. State, 595 P.2d 448 (Okla. Crim.

App. 1979), and the "rule of completeness."  See Tr. Vol. VIII at 1601.

Goode raised this claim on direct appeal.  The OCCA found that "[e]ven though the trial

court failed to exercise proper judicial discretion, fortunately, its decision that the tape was

admissible was correct."  Goode, 236 P.3d at 677.  After noting that the recorded statement was not

entered during Chastain's testimony, the OCCA explained its ruling, as follows:

> During the defense case, Goode's attorney called [Detective Mike] Denton
> to testify.  Counsel played portions of the recorded statement when Denton could not
> remember the contents of the conversation he had with Chastain.  Denton's
> testimony and the recording was [sic] essentially used to impeach Chastain's
> testimony, which is proper pursuant to 12 O.S.2001, § 2613(B).  During the
> examination, counsel asked Denton about Chastain's statements regarding where
> Goode confided in her and the "homeless person" Goode believed to be an
> undercover police officer.  The record does not reveal how much of the tape was
> played for the jury.
>
> Afterwards, during the State's cross-examination of Denton, the State
> requested that the entire recordings of two Chastain interviews be introduced as
> evidence.  Defense counsel objected, stating that the tapes were not admissible as
> prior consistent statements.  The trial court inquired whether the recordings were
> admissible under the rule of completeness. Defense counsel then insisted that he was
> using the tape to refresh the officer's memory of the interview; however, the trial
> court disputed that fact and noted that defense counsel played the recording for the
> jury and asked Denton to confirm the contents.
>
> The trial court reserved ruling on the admissibility of the tape, because it
> wanted to review the rule of completeness.  As a final argument, defense counsel
> countered that there was irrelevant prejudicial information contained on the tape, but
> counsel was not specific.  The prosecution responded that it did not recall any
> historical information that might be prejudicial.

At the conclusion of the first stage of trial, the trial court took up the admissibility of the recording of Chastain's interviews. The trial court heard argument, ruled that the recording of Denton's interview of Chastain was admissible pursuant to *Utt* and the rule of completeness. The tape was submitted to the jury.

In *Utt*, this Court held admission of the entire videotape containing an accomplice's prior consistent statement was proper where the defense had admitted portions of the tape as inconsistent. Statutory codification of the rule of completeness cited in *Utt*, 12 O.S.Supp.2002, § 2107, provides that when a party has introduced a portion of a record, "the adverse party may require introduction at that time of any other part . . . that should in fairness should [sic] be considered contemporaneously with it."

Our holding in *Utt* clearly supports the admission of the tape. . . . Here, Goode cannot complain that the entire taped statement was given to the jury after he introduced portions favorable to his case.

Obviously, Goode's theory at trial was that Chastain was fabricating this whole story, because she made conflicting statements about where Goode told her the story. The tape was certainly admissible so that the jury could judge whether comparison between the story told at trial and story told during the police interview indicated that Chastain was either a credible or unbelievable witness.

Although admissible, certain evidence may be excluded if its relevance is substantially outweighed by certain dangers. Because trial counsel failed to adequately identify, for the trial court, material in the tape which he claims was objectionable, our review of this portion of the proposition is for plain error only. We find no plain error occurred, because the relevance of this tape was not substantially outweighed by the danger of unfair prejudice, confusion of the issues or any other danger. *See* 12 O.S.Supp.2003, § 2403. Furthermore, we find that the admission of this tape did not improperly bolster Chastain's testimony.

Goode, 236 P.3d at 677-78 (citations, quotations, and footnotes omitted).

### A. Due process

Goode argues that the videotape of Chastain's interview was improperly admitted under

Okla. Stat. tit 12, § 2403, because the danger of unfair prejudice substantially outweighed the

probative value of the tape. See Dkt. # 18 at 80. As discussed above, Goode will not be entitled to

habeas corpus relief based on this alleged due process violation unless he demonstrates that his trial,

as a whole, was rendered fundamentally unfair.  Maes, 46 F.3d at 987; see also Martin, 907 F.2d at 934 .

Goode fails to demonstrate that admission of Chastain's videotaped interview rendered his trial fundamentally unfair.  During direct examination of Officer Denton, Goode's counsel asked about inconsistencies between Chastain's trial testimony and statements made during her interview with police.  See Tr. Vol. VII at 1527-32.  A portion of the videotaped interview was played for the jury.  Id. at 1528.  Goode alleges that he was prejudiced because Chastain was emotional and cried during the interview, and referenced a debt owed by Johnson and the value of jerseys Goode received as repayment, thereby implicating Goode's involvement in gang activity.  See Dkt. # 18 at 82.  However, Chastain testified, without objection, as to many of the statements Goode now finds objectionable.  In addition, references to Johnson's debt and the jerseys lacked specificity and did not necessarily implicate gang activity.  Thus, when viewed in context of the testimony and evidence presented at trial, the admission of the videotape of Chastain's interview did not render Goode's trial fundamentally unfair in violation of due process.  Goode fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented at trial.  Accordingly, habeas corpus relief on this claim is denied.

### B.  Confrontation clause

Goode also argues that admission of the videotape violated his rights under the Confrontation Clause.  See id. at 83.  Goode raised this claim on direct appeal.  The OCCA found no constitutional violation, reasoning that:

Goode bases this argument, that the introduction of the recording violates the confrontation clause, on his reading of *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). However, language in *Crawford* supports an opposite conclusion.

> [W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162, [90 S. Ct. 1930, 1937, 26 L. Ed. 2d 489] (1970). It is therefore irrelevant that the reliability of some out-of-court statements "cannot be replicated, even if the declarant testifies to the same matters in court." *Post*, at 1377 (quoting *United States v. Inadi*, 475 U.S. 387, 395, [106 S. Ct. 1121, 1126, 89 L. Ed. 2d 390] (1986)). The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *See Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985).)

*Crawford*, 541 U.S. at 59, fn. 9, 124 S. Ct. at 1369, fn. 9 [parallel cites added]. Here, the declarant, Chastain, testified in the State's case in chief and she was extensively cross examined by defense counsel. There was no violation of the confrontation clause here.

Goode, 236 P.3d at 679.

In his petition, Goode alleges that the OCCA's adjudication was an unreasonable application of federal law because the state court "failed to decide the second Constitutional prerequisite mandated by Crawford – if Ms. Chastain was unavailable." See Dkt. # 18 at 83-84. He contends that, because the videotaped interview was testimonial, it was necessary for the State to demonstrate that Chastain was unavailable as a witness before the videotape was admitted into evidence.

As the OCCA noted in rejecting this claim, the Supreme Court emphasized that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the issue of his prior testimonial statements . . . . The Clause doe not bar admission of a statement so long as the declarant is present at trial to defend or explain it." Crawford, 541 U.S. at

49

59 n.9.  Clearly, Chastain was available at trial when she testified as witness for the State.  Defense counsel cross-examined her extensively and specifically asked multiple times whether she was truthful during the police interviews.  See Tr. Vol. V at 1078-1081, 1084, 1086, 1088, 1089, 1092, 1097-98, 1103.  Although it is not clear whether defense counsel had subpoenaed Chastain, she was available and cross-examined by defense counsel at trial regarding her statements to police.  Even though the videotaped interview was not entered into evidence until the defense was presenting its case, there was no confrontation clause violation.  Goode fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented at trial.  Accordingly, habeas corpus relief on this claim is denied.

### V.  Admission of jailhouse informant's testimony (Ground 5)

As his fifth proposition of error, Goode claims that the trial court deprived him of his rights to due process and a fundamentally fair trial by allowing the State to call jailhouse informant Fred Clemons to testify.  See Dkt. # 18 at 85.  The record reflects that Goode filed pretrial motions to suppress Clemons' testimony.  O.R. Vol. I at 116-17, 194-95.  Those motions were overruled.  On May 25, 2007, the trial judge held a Dodd[7] hearing with regard to Clemons' testimony.  See Tr. Dodd Hr'g (May 25, 2007).  During trial, Goode again objected, just prior to Clemons taking the stand, and argued, inter alia, that the State improperly intended to impeach Clemons' testimony with

---

[7]     Dodd v. State, 993 P.2d 778 (Okla. Crim. App. 2000) (adopting procedure to ensure complete disclosure so that defense counsel will be prepared to cross-examine a jailhouse informant).

inconsistent statements made to police. Tr. Vol. V at 1110-14. While he acknowledged conflict in Clemons' statements, the trial judge allowed Clemons to testify. Id. at 1112.

On direct appeal, Goode alleged that "Clemons' testimony was not relevant, was lacking in credibility, and was a pretext for introducing prior inconsistent statements as substantive evidence of guilt." Goode, 236 P.3d at 679. The OCCA described the relationship between Goode and Clemons and the content of Clemons' trial testimony, and found as follows:

> Goode met Fred Clemons in the Tulsa County Jail, where they were incarcerated in the same "pod" for a couple of days. According to Clemons' testimony, Goode told him he was accused of the triple homicide in Owasso. Goode told Clemons that Chastain was trying to set him up, and he would like to have her killed. Clemons asked him "How much?" and Goode said "Ten thousand." Goode then asked if Clemons knew anyone that would do it. Clemons told Goode that he would get back with him.

> Clemons further testified that Goode told him that "They said it was three people involved in the shootings." He said a little girl got killed with a .22. He told Clemons that a "clip had been unloaded" on the lady; either a nine-millimeter or a .45 caliber pistol. Clemons also testified that Goode told him that a .22, a nine-millimeter and a .357 were used in the murders.

> After this conversation, Clemons recalled that he contacted a jailer, and later an Owasso detective interviewed him regarding his knowledge of the crime. At this point in Clemons' testimony his memory became fuzzy about what Goode told him and what he told police.

> Clemons did recount that he told the police that Goode said that he had the .357 caliber handgun. He testified that he told police that Thompson had the .22 and Goode's cousin had the nine. However at trial, Clemons recanted and said that Goode never actually told him these facts and testified that Goode told him he was not at the shootings.

> Clemons testified that Goode believed that the murder occurred because Mitch caused DHS to take Chastain's baby away from her and because Mitch had beaten Thompson until Thompson became unconscious. According to Clemons, Goode said Thompson shot the child with the .22.

On cross examination, Clemons again testified that Goode told him he was with his mother and was not present when the shooting took place. He said that Goode never admitted to any involvement in the murders. He testified that he was willing to tell police anything so he could get relief on his cases in Texas. He also testified that he had testified in a previous case in 1995 and was able to have charges against him dismissed. Clemons admitted that he was making assumptions when he talked to the police and he basically lied to the police, but he was telling the truth at trial.

On redirect Clemons testified that Goode told him details about the murders of which he was unaware, such as, there were three guns used: a .22, a nine-millimeter, and a .357. He claimed that he told police that Goode said he was not present when the murders occurred, but he could not find in the transcript of the interviews where that occurred.

Obviously, Goode had information about this case and was willing to share this information with Clemons. A review of Clemons' testimony reveals that his testimony was relevant on this account. Even Goode admits that evidence that a defendant has relayed details of a crime, which only the perpetrator could have known, is relevant. *See Dodd v. State*, 2004 OK CR 31, ¶ 29, 100 P.3d 1017, 1030 (holding defendant's proprietary knowledge regarding details of a crime provided probable cause for arrest). Evidence showing a defendant's knowledge of the details of a crime, which have not been released to the public, is relevant to show participation in the crime. *See* 12 O.S.2001, § 2401 (defining relevant evidence). Goode complains, however, that the way Clemons was questioned made it seem as if Goode had confessed to the crime.

We read the testimony differently. Clemons repeatedly testified that Goode told him that he was not involved in the murders, his girlfriend was trying to set him up for the murders, and Goode never told him that he was at the crime scene. Furthermore, the jury's use of Clemons' prior statements, inconsistent with this testimony, was properly channeled by an instruction which told them that they could only use Clemons' prior inconsistent statements as impeachment and not as substantive proof of guilt. In conclusion, we find that the trial court did not abuse its discretion in permitting this testimony.

Id. at 679-80.

In his habeas petition, Goode argues that Clemons' testimony was inadmissible under state law because it was irrelevant, the danger of unfair prejudice substantially outweighed the probative value, and the testimony was improperly impeached as a pretext for introducing substantive

evidence of guilt.  See Dkt. # 18 at 89-96.  Goode also claims that, by allowing Clemons to testify, the trial court violated his Fourteenth Amendment rights.  Id. at 96.  He further claims that because the OCCA failed to address the merits of his Fourteenth Amendment claim, the state appellate court's decision is not entitled to deference under the AEDPA.  Id. at 97.

As discussed above, "federal habeas corpus relief does not lie for errors of state law." McGuire, 502 U.S. at 67; see also Hooks, 606 F.3d at 748.  A petitioner must demonstrate that the allegedly erroneous evidentiary ruling rendered his trial, as a whole, fundamentally unfair.  Maes, 46 F.3d at 987; see also Martin, 907 F.2d at 934.

The Court rejects Goode's argument that the OCCA's decision is not entitled to deference under the ADEPA.  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99; accord Williams, 133 S. Ct. at 1094 (finding that, where a federal claim is presented to a state court and relief is denied, the presumption of a merits adjudication is rebuttable).  "Where there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision on the merits even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion."  Dodd, 753 F.3d at 983 (ellipsis and internal quotation marks omitted).  A federal habeas court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated."  Aycox, 196 F.3d at 1177.

On direct appeal, Goode cited Donnelly v. DeChristoforo, 416 U.S. 637 (1974), and argued that the admission of Clemons' testimony "was so highly prejudicial to Appellant as to amount to a denial of due process."  See Brief of Appellant, Case No. D-2008-43, at 34.  Although the OCCA

did not address the Fourteenth Amendment claim, the state appellate court nonetheless denied relief on Goode's claim challenging the admission of Clemons' testimony.  Goode has not rebutted the presumption of a merits adjudication.  Therefore, the OCCA adjudicated Goode's Fourteenth Amendment claim on the merits and the ruling is entitled to deference.

Goode is not entitled to habeas corpus relief on his claim challenging the admission of Clemons' testimony unless he demonstrates that, because of the court's evidentiary ruling, his trial, as a whole, was rendered fundamentally unfair.  Wilson, 536 F.3d at 1101-02.  The Court finds that Clemons' testimony about his conversations with Goode was relevant and admissible.  Furthermore, it was made  abundantly clear to the jury, especially during defense counsel's cross-examination of Clemons, that Goode told Clemons he was not present at the house in Owasso and had no involvement in the murders.  Tr. Vol. V at 1124, 1126-28, 1130, 1133, 1149.  In addition, the jury received an instruction limiting the use of Clemons' inconsistent statements.  See O.R. Vol. IV at 667.  The jury was instructed that:

> Evidence has been presented that on some prior occasion William Clemons made a statement inconsistent with his testimony in this case.  This evidence is called impeachment evidence and it is offered to show that the witness's testimony is not believable or truthful.  If you find that a statement was made, you may consider this impeachment evidence in determining what weight and credit to give the testimony of that witness.  You may not consider this impeachment evidence as proof of innocence or guilt.  You may consider this impeachment evidence only to the extent that you determine it affects the believability of the witness, if at all.

Id.

Based on the entire record, the Court cannot find that the admission of Clemons' testimony rendered Goode's trial fundamentally unfair.  Goode is not entitled to habeas corpus relief on Ground 5.

## VI.  Admission of victim impact evidence (Ground 6)

In Ground 6, Goode claims that the victim impact evidence introduced during the second stage violated his rights under the Eighth and Fourteenth Amendments (Dkt. # 18 at 98). Specifically, he complains that the testimony of Tessa Amaro, who spoke of the loss of her niece, Kayla Burchett, exceeded the scope of the state statute governing victim impact statements.  Id. at 101.  Respondent contends that a writ of habeas corpus is unavailable for errors of state law and that the OCCA's ruling that Goode was not denied a fundamentally fair trial is not contrary to, nor did it involve an unreasonable application of, clearly established federal law as determined by the Supreme Court.  See Dkt. # 27 at 84.

On direct appeal, Goode argued that the testimony of Amaro was not proper under the governing statute and that the victim impact evidence violated the Eighth Amendment because it acted as an "unauthorized 'superaggravator.'"  The record reflects that the State presented three (3) victim impact witnesses.  All three read prepared statements.  Jim Burchett spoke about the loss of his daughter, Tara Burchett.  Gwen Davidson spoke about the loss of her brother, Mitch Thompson, Jr.  The trial judge found that, over defense counsel's objection, Tessa Amaro could testify as the family designee about the loss of her niece, Kayla Burchett.  The OCCA agreed that a portion of Amaro's testimony was improper, finding as follows:

> The unusual family dynamic represented in this case presents a situation that is not contemplated by the victim impact statute.  Kayla was being raised primarily by her grandparents who were also Amaro's parents.  Kayla's only "immediate family members," her mother and father, were also killed in this crime.  While one could possibly conclude that the closeness of Kayla to Amaro was much like that of sister, Amaro testified that Kayla and her daughter were like sisters, not that she and Kayla were like sisters.  Because this type of relationship is not one which is defined as an "immediate family member," we find that testimony regarding the impact of Kayla's death on Amaro and her daughter was not proper.

Goode, 236 P.3d at 684.  However, the OCCA further found that:

> [W]e cannot find that this testimony prejudiced Goode in any way.  Kayla was only one of three victims in this case.  Amaro's testimony consisted of a prepared statement taking up two pages of transcript.  Her testimony, generally, was about the effect of Kayla's death on the immediate family and the family dynamic, which was admissible.  The small portion which was not admissible, in light of the remaining permissible victim impact evidence, did not contribute to the sentence in this case. *See Lott*, 2004 OK CR 27, ¶ 114, 98 P.3d at 348.

Id.  The OCCA also rejected Goode's Eighth Amendment claim, finding as follows:

> . . . Goode claims that victim impact evidence, in general, violates the Eighth Amendment and has no place in Oklahoma's capital sentencing scheme.  He argues that victim impact acts as an unauthorized "superaggravator."  We have consistently rejected this argument, and we find no reason to revisit the issue here.  Jackson v. State, 2007 OK CR 24, ¶ 26, 163 P.3d 596, 603-04 (and cases cited therein).

Id.

## A.  Eighth Amendment

The Eighth Amendment bars specific types of victim impact statements.  Stouffer v. Trammell, 738 F.3d 1205, 1226 (10th Cir. 2013) (citing Lockett, 711 F.3d at 1235).  Specifically, the victim's family may not offer opinions about the crime or the defendants and may not offer sentencing recommendations to the jury.  See Lockett, 711 F.3d at 1235 (discussing Supreme Court precedent, including  Payne v. Tennessee, 501 U.S. 808 (1991), and Booth v. Maryland, 482 U.S. 496, 502 (1987), overruled in part by Payne, 501 U.S. at 825)); Selsor v. Workman, 644 F.3d 984, 1026-27 (10th Cir.2011); Hooper, 314 F.3d at 1174; Hain v. Gibson, 287 F.3d 1224, 1238-39 (10th Cir. 2002).

Goode's habeas claim based on a violation of the Eighth Amendment fails.  Amaro's brief testimony did not include any statements prohibited by the Eighth Amendment.  She made no sentencing recommendations, she offered no opinion about Goode's characteristics, and, other than

referencing that the victims died in bed, she did not describe the crimes. Stouffer, 738 F.3d at 1227. In addition, the jury was specifically instructed that they could only consider those aggravating circumstances set forth in the instructions. See O.R. Vol. IV at 716, Instruction No. 11. Goode has failed to demonstrate that the jury would not have found the aggravating circumstances but for the victim impact evidence. The Court finds that Amaro's victim impact statement did not violate the Eighth Amendment. Goode fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). For that reason, he is not entitled to habeas corpus relief on this claim.

### B. Fourteenth Amendment

A defendant's Fourteenth Amendment due process rights are violated when the state introduces victim impact evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair." Payne, 501 U.S. at 825. For example, victim impact testimony that is highly emotionally charged may have this effect and may violate due process. See Short v. Sirmons, 472 F.3d 1177, 1193 (10th Cir. 2006).

The OCCA held that the victim impact statement presented by Amaro, a family representative designated to speak on behalf of Kayla, was improper, not because it was "highly charged" and exceeded the constitutional bounds of permissibility, but because neither Amaro nor her daughter fit the statutory definition of "immediate family member."[8] Goode, 236 P.3d at 683-84.

---

[8]    Under Oklahoma law in effect at the time of Goode's crime and trial, "victim impact statements" were defined as "information about the financial, emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family, or person designated by the victim or by family members of the victim and includes information about the victim, circumstances surrounding the crime, the manner in which the

The OCCA nevertheless stated "we cannot find that this testimony prejudiced Goode in any way." Id. at 684.

Improper victim impact evidence does not entitle the defendant to relief unless it caused actual prejudice, rendering the trial or the sentencing unfair.  See Short, 472 F.3d at 1195.  To "assess the alleged prejudicial effect of the victim-impact testimony," a court must "examin[e] the aggravating and mitigating factors and the overall strength of the State's case."  Id. at 1193.  In a collateral review of a state court's criminal judgment, an error is deemed "harmless unless it 'had a substantial and injurious effect or influence in determining the jury's verdict.'"  Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht, 507 U.S. at 631).  A substantial and injurious effect exists if a "court finds itself in grave doubt about the effect of the error on the jury's [sentencing decision]." Bland v. Sirmons, 459 F.3d 999, 1009 (10th Cir.2006) (quotations omitted).

Here, the jury found two aggravating circumstances – that Goode knowingly created a great risk of death to more than one person, and that there exists a probability that Goode would commit criminal acts of violence that would constitute a continuing threat to society.  The evidence supporting these aggravating circumstances was considerable.  All three victims in this case died of multiple gun shot wounds inflicted by more than one weapon while all three were in the same bedroom.  This evidence supported the great risk aggravator.

In addition, the jury heard testimony that Goode told Chastain "they would have shot Bunny but he took off running," Tr. Vol. V at 1063, that Goode threatened to harm Chastain and her family

---

crime was perpetrated, and the victim's opinion of a recommended sentence."  Okla. Stat. tit. 22, § 984(1) (2001).  At the time of this trial, "members of the immediate family" meant "the spouse, a child by birth or adoption, a stepchild, a parent, or a sibling of each victim." Okla. Stat. tit. 22, § 984(2) (2001).

if she told police what she knew about the crimes, id. at 1071-72, and that Goode told Fred Clemons he was willing to pay $10,000 to have Chastain killed, id. at 1119-20.  Also, the jury learned that Goode had a prior conviction for possession of a firearm after former conviction of a felony.  See Tr. Vol. IX at 1757 (admission of State's Ex. 145, Judgment in a Criminal Case, entered in N.D. Okla. Case No. 09-CR-044-001-H).  That evidence supports the continuing threat to society aggravating circumstance.

Goode's mitigation evidence focused on his positive personality traits.  During the sentencing stage, he presented two mitigation witnesses, his mother and his fiancée, who testified that he was a good father and son and was devoted to his family.  During the first stage of trial, a coworker testified that Goode was caring and attentive in providing care and assistance to patients at the hospital.

After carefully weighing the aggravating and mitigating evidence, the Court finds that, although the mitigating evidence indicated Goode had positive attributes, it was not so compelling as to overcome the extensive aggravating evidence and the jury's finding of two aggravating circumstances.  Therefore, the Court cannot say that the victim impact statement had "a substantial and injurious effect or influence in determining the jury's verdict."  Fry, 551 U.S. at 116 (quotations omitted).  Goode has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Habeas relief on Ground 6 is denied.

## VII.  Structural error (Ground 7)

As his seventh ground of error, Goode claims that the continuation of his trial, despite a severe, crippling ice storm, resulted in structural error (Dkt. # 18 at 103).  In the alternative, Goode

claims that trial counsel provided ineffective assistance in failing to request a continuance. Id. Respondent argues that the OCCA's resolution of these claims was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court (Dkt. # 27 at 87).

It is undisputed that, mid-way through Goode's trial, a severe ice storm struck the City of Tulsa. Despite the devastation attributable to the storm, the Tulsa County Courthouse did not close and Goode's capital trial continued. Trial counsel did not request a continuance. Goode did not raise his claims related to the ice storm on direct appeal. However, he raised them in his original application for post-conviction relief. The OCCA ruled as follows:

> In proposition two, Goode claims that trial counsel was ineffective because he did not request a continuance when a major ice storm struck Tulsa County during trial. The summary of the argument seems to be that Goode was prejudiced because the jurors may have been preoccupied by the ice storm and did not have their full attention on the trial. The factual basis for this claim was available to Goode on direct appeal. Thus, again he must show that prior counsel was ineffective. This he cannot do. Goode has made no showing of actual prejudice from counsel's failure to request a continuance and the failure to raise this issue on direct appeal. Thus his claim of ineffective assistance must fail, and this proposition is denied.

Opinion Denying Petitioner's Original Application for Post-Conviction Relief, entered Sept. 7, 2010, in Case No. PCD-2008-211, at 6.

**A. Procedural bar**

In finding that the factual basis for this claim was available to Goode on direct appeal, the OCCA imposed a procedural bar on the claim. The Court finds that, under the governing standards discussed in General Considerations, Part II, the OCCA's procedural bar is independent and adequate to preclude federal habeas corpus review. Thus, Goode's claim will be denied unless he

demonstrates cause and prejudice to overcome the procedural bar or that a fundamental miscarriage of justice will result if his claim is not considered.

### B.  Ineffective assistance of appellate counsel

Goode argues that ineffective assistance of appellate counsel serves as cause to overcome the procedural bar.  The OCCA found that Goode failed to demonstrate prejudice resulting from trial counsel's failure to request a continuance and the failure of appellate counsel to raise the ice storm issue on direct appeal.  As a result, the OCCA concluded that Goode's claim of ineffective assisance fails and denied relief on this claim.

Goode is not entitled to habeas corpus relief on his claim of ineffective assistance of counsel. The Court has determined above, see Ground I(B)(1), that Goode cannot satisfy the prejudice prong of Strickland and that he is not entitled to habeas corpus relief on this claim of ineffective assistance of counsel.  Also, the Court found above, id., that the failure to continue the trial was not "structural error" resulting in a presumption of prejudice.  Therefore, Goode has failed to demonstrate cause to overcome the procedural bar applicable to this claim.  In addition, Goode does not argue that a fundamental miscarriage of justice will result if this claim is not considered.  The claim is procedurally barred.  Habeas corpus relief on Ground 7 is denied.

## VIII.  Prosecutorial misconduct (Ground 8)

As his eighth ground of error, Goode complains of "pervasive prosecutorial misconduct" throughout both stages of his trial.  See Dkt. # 18 at 110.  Citing Donnelly, 416 U.S. at 643, and Mahorney v. Wallman, 917 F.2d 469, 473 (10th Cir. 1990), he identifies three (3) specific instances of misconduct:

> (1) repeatedly engaging in name-calling through references and comparisons of Mr. Goode to the lead character in the movie *Scarface*; (2) vouching for jail-house informant William Clemons or otherwise encouraging the jury to impermissibly consider his prior statements as substantive evidence; and (3) shifting the burden of proof to the defense by arguing the defense needed to corroborate its witnesses.

(Dkt. # 18 at 110-11).  In response, Respondent argues that Goode is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).  (Dkt. # 27 at 95).

The Supreme Court has established rules that govern a petitioner's prosecutorial misconduct claims. "Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002) (quoting Donnelly, 416 U.S. at 643). "Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair." Id.  Not every improper and unfair remark made by a prosecutor will amount to a federal constitutional deprivation. See Caldwell v. Mississippi, 472 U.S. 320, 338 (1985) (plurality opinion). Federal law clearly provides that in order to constitute a due process violation the prosecutorial conduct must be of sufficient significance to result in the denial of a defendant's right to a fair trial. Donnelly, 416 U.S. at 645.

This Court's inquiry into the fundamental fairness of a trial can only be made after examining the entire proceeding.  Donnelly, 416 U.S. at 643.  The complained-of remarks or arguments must be considered in the context in which they were made. Greer v. Miller, 483 U.S. 756, 765-66 (1987); see also Darden v. Wainwright, 477 U.S. 168, 179 (1986). The Tenth Circuit directs that:

> To view the prosecutor's statements in context, we look first at the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly "could have tipped the scales in favor of the prosecution." . . . We also ascertain whether curative instructions by the trial judge, if given, might have mitigated the effect on the jury of the improper statements. . . . Ultimately, we "must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."

Fero v. Kerby, 39 F.3d 1462, 1474 (10th Cir. 1994) (citations omitted).  In addition, the Court must consider the prejudice, if any, attributable to the prosecutor's comments.  Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994) (citing Mahorney, 917 F.2d at 472-73).

The Tenth Circuit Court of Appeals has found "no practical distinction" between the OCCA's formulations of plain error and the federal due-process test, requiring reversal when an error "so infused the trial with unfairness as to deny due process of law."  Thornburg v. Mullin, 422 F.3d 1113, 1125 (10th Cir. 2005) (quoting McGuire, 502 U.S. at 75).  Because the OCCA applied the same test required for a due process determination, this Court defers to its ruling unless it "unreasonably appli[ed]" that test.  Id. (citing 28 U.S.C. § 2254(d)); see also Dockins v. Hines, 374 F.3d 935, 940 (10th Cir. 2004).  A proceeding is fundamentally unfair under the Due Process Clause if it is "shocking to the universal sense of justice."  U.S. v. Russell, 411 U.S. 423, 432 (1973).

**A.  Repeated comparisons to *Scarface***

As his first instance of prosecutorial misconduct, Goode alleges that the prosecution improperly compared him to the lead character in the movie *Scarface*.  See Dkt. # 18 at 113.  Specifically, Goode cites to the following statements made during closing argument:

> That's the man you're looking at.  That's the man who fashions himself as a modern day Scarface.  That's the killer that he is.
>
>       . . . .

63

> In his adopted role as Scarface, he kills his nemesis and then parades himself as an intimidator.
>
> . . . .
>
> [Y]ou can just hear the lines being spoken by Al Pacino when you consider the evidence in this case, I was like Scarface, your brother was a coward who tried to get away while his family was dying.

Id. (citing Tr. Vol. VIII at 1694-95; Vol. IX at 1818, 1841).

Goode argued on direct appeal that the prosecution improperly referenced the movie *Scarface* and implied that Goode was "emulating the gangster portrayed by Al Pacino in that movie." Goode, 236 P.3d at 681. The OCCA reviewed the prosecutor's references to *Scarface* during opening statement, during the testimony of Chastain, and during closing argument. Id. In addition, the OCCA cited evidence introduced at trial, including a notebook found in Goode's car with a picture of *Scarface* taped to the front, and a *Scarface* t-shirt worn by Goode at the time of his arrest. Id. The OCCA first addressed the relevance of the *Scarface* evidence, stating as follows:

> The theory of the State's case was that Goode envisioned himself as a modern day *Scarface*, who took care of his own business with force. The statements by Goode to Chastain and his possession of *Scarface* fan paraphernalia provided a basis for this theory. We find that this evidence was relevant to show Goode's motive for these crimes.

Id. at 682. The OCCA went on to reject Goode's claim that the prosecutor improperly commented on the *Scarface* evidence during closing argument. Id. at 685. Reviewing for plain error, the OCCA found that "[t]he prosecutor here was simply arguing the evidence from the State's point of view," and concluding that "the prosecutor was merely exercising his right of argument based on the evidence presented; there was no misconduct in this argument." Id.

64

Closing arguments are for persuasive purposes and counsel is allowed some latitude.  See Hooper, 314 F.3d at 1172 ("The prosecutor also possesses reasonable latitude in drawing inferences from the record."); see also Banks, 692 F.3d at 1149.  It is important to note that "it is not enough that the prosecutors' remarks were undesirable or even universally condemned."  Banks, 692 F.3d at 1149 (quoting Darden, 477 U.S. at 181).  The remarks must infect the trial with unfairness.  Id.

The prosecutor's comments did not result in a fundamentally unfair trial and did not violate Goode's due process rights.  The prosecutor's arguments were fair comment on, and inferences from, the evidence and were not improper.  Goode has failed to demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).  Habeas relief is denied on this claim.

**B.  Vouching for credibility of witness**

Next, Goode argues that, during his closing argument, the prosecutor improperly vouched for the credibility of jailhouse informant Fred Clemons.  See Dkt. # 18 at 114.  Goode identifies the following two arguments presented during closing statements:

> Now, Fred Clemons testified to that fact at preliminary hearing and he testified to it here.  He never backed off of that.  When he was at the preliminary hearing, he was in custody, and if you have any familiarity with the system at all, you know that it's not a good thing to be in custody and be labeled a snitch.  He had made statements to law enforcement and he got called at preliminary hearing and he wanted to say and still wants to say and did say before you, well, I conjectured a lot of this stuff, but you notice that he has – he has details about this incident back in that time frame that he would only learn through Clarence Goode and not the media or something like that.
>
> . . . .

65

[The defense] go[es] after Mr. Clemons and say, you know what, he was just assuming facts, that's what he said, he was assuming facts.  Remember what I did with Mr. Clemons?  I brought to his attention the statement he gave.  It was so distressing to him when he heard about this information that he went to the sheriff's deputy . . . [Mr. Goode] gave very specific details, very specific details.  [Mr. Goode] said he had the .357, [Mr. Goode] said that Bunny had the .22, [Mr. Goode] says that the cousin, Fu Fu, had the nine millimeter.

Id. (citing Tr. Vol. VIII at 1657-58, 1708-09).

Goode raised this claim on direct appeal.  Goode, 236 P.3d at 685.  Reviewing for plain error, the OCCA ruled that "[t]he prosecutor did not vouch for Clemons.  He was merely pointing out that Clemons testified to information which only the killer would know.  This argument did not amount to plain error."  Id.

Argument or evidence is permissible vouching unless "'the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.'" Thornburg, 422 F.3d at 1132 (quoting U.S. v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (internal quotation marks omitted)); see also U.S. v. Bowie, 892 F.2d 1494, 1498 (10th Cir. 1990).  A prosecutor's vouching for the credibility of witnesses can "jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury[,] and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  U.S. v. Young, 470 U.S. 1, 18-19 (1985) (citing Berger v. U.S., 295 U.S. 78, 88-89 (1935)).

Goode's claim that the prosecutor impermissibly vouched for the credibility of Clemons falls short.  Goode argues that, in the first allegedly improper argument, the prosecutor "clearly" encouraged the jury to accept Clemons' statements as true because Clemons did not want to be

66

labeled as a snitch.  See Dkt. # 18 at 114.  In the second argument, Goode claims the prosecutor "outright told the jury to disregard informant Clemons' testimony about his assuming facts and instead treat Clemons' prior statements as Mr. Goode's confession!"  Id. at 114-15.  The Court disagrees.  When placed into context, the prosecutor's closing statements acknowledged Clemons' testimony that he had assumed some parts of his story, but that other information revealed by Clemons could have in fact only been learned from Goode.  The prosecutor did not give his explicit personal assurances of Clemons' veracity nor did he imply that information not presented to the jury supported Clemons' testimony.  The Court finds the prosecutor did not impermissibly vouch for Clemons' credibility.

Goode was not deprived of a fundamentally fair trial and the prosecutor's remarks did not violate Goode's due process rights.  Goode has failed to demonstrate that the OCCA's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented at trial.  28 U.S.C. § 2254(d)(1), (2).  Habeas relief is denied on this claim.

### C.  Shifting burden of proof

As his final claim of prosecutorial misconduct, Goode argues, as he did on direct appeal, that the prosecutor improperly shifted the burden of proof to the defense when he told the jury that the defense was required to offer evidence to corroborate its witnesses.  See Dkt. # 18 at 115-17.  Goode complains of the following remarks made during the prosecutor's closing argument:

> I love how we're held to the standard of poof and corroborate.  You know, where's the corroboration?  But for the single notation, as I recall, on the phone records to Penny Avans' number that connects her at all with any of this case, did you hear one bit of evidence, one other evidence, one other witness, that could corroborate what Penny Avans had to say?  She just got up here and told you bald faced lies.

. . . .

It's easy to put a person up there and just have them chat away at that because they don't have any accountability, they don't have any way to have anybody check what they've got to say.  I said it, so believe me.  You know, we're held to that standard.  We are.  And we give you evidence to back up the story that Ronald Thompson told you.  And we give you evidence to back up the story that Michelle Chastain told you.

Id. at 116 (citing Tr. Vol. VIII at 1705, 1707).  Goode claims that this burden shifting "acted to violate [his] right to a jury verdict under the Sixth Amendment and corresponding requirement under the Fifth Amendment that the state prove all elements of all charges beyond a reasonable doubt." Id. at 117.

In resolving this claim on direct appeal, the OCCA noted that "[t]he prosecutor argued that testimony from defense witness Penny Avans lacked corroboration.  He also argued that the testimony of State's witnesses Michelle Chastain and Ronald Thompson were fully corroborated." Goode, 236 P.3d at 685.  However, the OCCA found no plain error, ruling that "[w]hile some of the State's witnesses' testimony required corroboration in this case – such as accomplice testimony – the same is not true of defense witnesses.  Here, though inartfully, the prosecutor was merely asking the jury to weigh the evidence in light of the entire record, as the instructions so indicate." Id. at 685-86.

While the Fifth Amendment prohibits the prosecution from commenting on a defendant's failure to testify, the prosecution may comment on defense counsel's failure to offer evidence or to call witnesses other than the defendant.  See U.S. v. Simpson, 7 F.3d 186, 190 (10th Cir. 1993) (collecting cases permitting prosecutorial comment on lack of evidence supporting defendants' theories).  Here, rather than shifting the burden of proof to the defense, the challenged comments emphasized that the State had the burden of proof and had met it.  Furthermore, the instructions

served to remind the jury that the State had the burden of proof.  See O.R. Vol. IV at 652.  The

prosecutor's comments did not rise to the level of misleading the jury into believing that Goode had

the burden of proving his innocence.  The comments did not so infect the trial with unfairness as to

render the resulting conviction a denial of due process, see Patton v. Mullin, 425 F.3d 788, 811 (10th

Cir. 2005), or so prejudice Goode's right to a presumption of innocence or privilege against

self-incrimination to amount to a denial of either of those rights.  See Hamilton v. Mullin, 436 F.3d

1181, 1187 (10th Cir. 2006) (citing Torres v. Mullin, 317 F.3d 1145, 1158 (10th Cir. 2003)).  Goode

has failed to demonstrate that the OCCA's decision was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court, or was based

on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C.

§ 2254(d)(1), (2).  Habeas relief is denied on this claim.

        In summary, the Court finds that, when viewed against the magnitude of the evidence against

Goode, the allegedly improper statements made during the prosecutor's closing arguments did not

result in a fundamentally unfair trial.  The evidence against Goode was compelling.  As discussed

above, evidence corroborated the testimony of Goode's co-defendant, Ronald Thompson, placing

Goode at the scene of the murders and firing a .357 handgun.  Goode also confessed his involvement

in the murders to Chastain.  In light of that evidence, Goode has not demonstrated that the

prosecutor's comments so infected his trial with unfairness as to deny him due process.  Neill v.

Gibson, 278 F.3d 1044, 1061 (10th Cir. 2001) (citing Darden, 477 U.S. at 181).  Goode fails to

convince the Court that the OCCA's decision was contrary to, or involved an unreasonable

application of, clearly established federal law, as determined by the Supreme Court.  28 U.S.C. §

2254(d).  Goode is not entitled to habeas relief on Ground 8.

### IX.  Jury instruction defining mitigating circumstances (Ground 9)

In Ground 9, Goode claims that Oklahoma's jury instruction defining mitigating circumstances is unduly limiting and was improperly used to eliminate the jury's consideration of the mitigation evidence.  <u>See</u> Dkt. # 18 at 118.  The challenged part of the instruction given to Goode's jury reads as follows:

> Mitigating circumstances are *those which, in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame*. The determination of what circumstances are mitigating is for you to resolve under the facts and circumstances of this case.

O.R. Vol. IV at 717, Instruction No. 12 (emphasis added).[9]  In rejecting this claim on direct appeal, the OCCA found that:

> [Goode] argues that the trial court's instruction which defines mitigating evidence as factors which "in fairness, sympathy, and mercy, may extenuate or reduce the degree of moral culpability or blame" impermissibly narrows the characterization of mitigation.  OUJI-CR 2d 4-78 (1996).  This same argument was recently rejected in *Rojem v. State*, 2009 OK CR 15, ¶ 26, 207 P.3d 385, 396, even in light of our decision to have the instruction modified in *Harris v. State*, 2007 OK CR 28, ¶ 27, 164 P.3d 1103, 1114.  We find that the jury in this case was not limited in their ability to consider mitigating evidence.

<u>Goode</u>, 236 P.3d at 684 (footnote omitted).  In footnote 18 of its opinion, the OCCA acknowledged that "[t]his instruction was modified by the OUJI committee after the trial of this case."  <u>Id.</u> at 684 n.18.

"The Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner."  <u>Boyde v. California</u>, 494 U.S. 370, 377-78

---

[9]      Goode does not mention the second paragraph of the instruction, which reads as follows: "While all twelve jurors must unanimously agree that the State has established beyond a reasonable doubt the existence of at least one aggravating circumstance prior to consideration of the death penalty, unanimous agreement of jurors concerning the mitigating circumstances is not required. In addition, mitigating circumstances do not have to be proved beyond a reasonable doubt in order for you to consider them." O.R. Vol. IV at 717, Instruction No. 12.

(1990). The standard for determining whether the jury instructions, which must be viewed in total, Cupp v. Naughten, 414 U.S. 141, 146-47 (1973), satisfy these principles is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Boyde, 494 U.S. at 380; see also Buchanan v. Angelone, 522 U.S. 269, 276 (1998). A state, however, need not structure in a particular way the manner in which juries consider mitigating evidence. Buchanan, 522 U.S. at 276.

This Court rejects Goode's argument. First, Goode's contention that there exists a reasonable likelihood that jurors understood the challenged language in the instruction to limit the jury's consideration of much of Goode's mitigating evidence is simply speculation. Next, to the extent Goode claims that the instruction "limited consideration to only those materials that 'extenuate or reduce the degree of moral culpability or blame'" (Dkt. # 18 at 119), Instruction No. 12 also told the jury that what is to be considered mitigating is for them to decide. See O.R. Vol. IV at 717. This statement broadens any limitations placed on the mitigating evidence through the first sentence. The jury was further instructed in Instruction No. 13 that evidence had been introduced of twelve enumerated mitigating circumstances and that "[i]n addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well." Id. at 718-19. Finally, the jury was instructed in Instruction No. 14 that they could not impose the death penalty unless they unanimously found that the aggravating circumstance or circumstances outweighed the mitigating circumstances. Id. at 720.

Having reviewed the challenged instruction (No. 12) in its entirety and in context of the other instructions provided to the jury, this Court finds there is not a reasonable likelihood that the jury applied Instruction No. 12 in a way that prevented them from considering any relevant mitigating evidence. See Boyde, 494 U.S. at 380; see also Hanson v. Sherrod, 797 F.3d 810, 849-52 (10th Cir.

2015) (rejecting challenge to identical instruction). Goode fails to demonstrate that the OCCA's adjudication of this claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Habeas corpus relief is denied on Ground 9.

## X.  Cumulative error at both stages of trial (Ground 10)

In Ground 10, Goode claims that the cumulative effect of errors in both stages of trial violated his rights under the Sixth, Eighth, and Fourteenth Amendments. See Dkt. # 18 at 122. On direct appeal, the OCCA cited Woods v. State, 674 P.2d 1150, 1154 (Okla. Crim. App. 1984), and rejected this claim, finding that "[a]fter reviewing this entire case, we find no individual error which requires reversal. Even when we view these alleged errors in a cumulative fashion, we find that no relief is required, thus Goode's cumulative error claim must fail." Goode, 236 P.3d at 688.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." U.S. v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). The Tenth Circuit has held that a cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Additionally, only federal constitutional errors can be aggregated to permit relief on habeas review. Matthews v. Workman, 577 F.3d 1175, 1195 (10th Cir. 2009). Cumulative impact of non-errors is not part of the analysis. Le, 311 F.3d at 1023 (citing U.S. v. Rivera, 900 F.2d 1462, 1470-71 (10th Cir. 1990)). "[T]he task 'merely' consists of 'aggregat[ing] all the errors that have been found to be harmless' and 'analyz[ing] whether their cumulative effect on the outcome of the

72

trial is such that collectively they can no longer be determined to be harmless.'" <u>Grant</u>, 727 F.3d at 1025 (quoting <u>Rivera</u>, 900 F.2d at 1470).

In this case, the Court has found two harmless errors during Goode's trial: the admission of the 911 audiotape and the victim impact statement of Tessa Amaro.  This Court has reviewed the identified trial errors together to determine if the accumulation rendered Goode's trial unfair.  Under the facts of this case, the Court cannot find that the cumulative effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." <u>Fry</u>, 551 U.S. at 121; <u>Brecht</u>, 507 U.S. at 637. The Court finds Goode has shown no cumulative error warranting a new trial. The OCCA's denial of Goode's cumulative error claim was not contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Habeas corpus relief is denied on Ground 10.

## XI.    Requests for an evidentiary hearing and for discovery

In his petition, Goode requests that he be allowed to engage in discovery (Dkt. # 18 at 136-148) and that the Court hold an evidentiary hearing on Grounds 1 and 2 (<u>id.</u> at 127-36).  As the disposition of Goode's habeas corpus petition does not require reference to any materials beyond those that are available and currently part of the record, the Court finds that there is no need for an evidentiary hearing or discovery in this case.  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). There are no disputed factual questions remaining that could possibly entitle Goode to habeas corpus relief.  He has failed to demonstrate the need for an evidentiary hearing under either 28 U.S.C. § 2254(e)(2), or any other governing principle of law. <u>Williams</u>, 529 U.S. 420.  Accordingly, Goode's requests for an evidentiary hearing and for discovery are denied.

## CERTIFICATE OF APPEALABILITY

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The Court recognizes that "review of a death sentence is among the most serious examinations any court of law ever undertakes." <u>Brecheen</u>, 41 F.3d at 1370. To be granted a certificate of appealability, however, Goode must demonstrate a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists of reason or that the questions deserve further proceedings. <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003). "[O]bviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor." <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983) (citations omitted).

The Court reviewed each of Goode' propositions of error, and found none of the claims merited or warranted habeas relief. However, the Court has carefully considered each issue and finds that the following enumerated issue could be debated among jurists:

<u>Ground 1</u>: Ineffective assistance of counsel.

Additionally, this Court finds that this issue is "adequate to deserve encouragement to proceed further." <u>See</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (citing <u>Barefoot</u>, 463 U.S. at 893).

## CONCLUSION

After careful review of the record in this case, the Court concludes that Goode has not established that he is in custody in violation of the Constitution or laws of the United States.  His petition for writ of habeas corpus shall be denied.

**ACCORDINGLY IT IS HEREBY ORDERED** that:

1.      The Clerk of Court shall note the substitution of Kevin Duckworth, Interim Warden, as party respondent in place of Anita Trammell, Warden.

2.      The petition for writ of habeas corpus (Dkt. # 18) is **denied**.

3.      Goode's motions for an evidentiary hearing and for discovery (Dkt. # 18) are **denied**.

4.      A certificate of appealability is **granted** as to the claims of ineffective assistance of counsel raised in Ground 1.

5.      A separate judgment shall be entered in this matter.

**DATED** this 11th day of July, 2016.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT